# EXHIBIT  B

ROBERT H. MEISEL
WILLIAM C. COLLINS
MICHAEL H. ALLEN
R. DRUMMOND BLACK
RAMON F. ROLF, JR.
PETER A. POZNAK
PETER C. JENSEN
CAROLYN POLLOCK CARY
DARRELL R. ZOLTON
JONATHAN E. LAUDERBACH
W. JAY BROWN
WILLIAM R. GARCHOW
AMBER DAVIS-JOHNSON
R. PAUL LARSEN
KRISTINA S. PENNEX

OF COUNSEL:
JAMES A. KENDALL

# CURRIE KENDALL PLC

ATTORNEYS AT LAW

### MIDLAND OFFICE

6024 EASTMAN AVENUE
MIDLAND, MICHIGAN 48640
989 839-0300
FAX 989 832-0077

### SAGINAW OFFICE

4800 FASHION SQUARE BOULEVARD
SUITE 100
SAGINAW, MICHIGAN 48604
989 792-1111
FAX 989 792-7000

GILBERT A. CURRIE
1882 - 1960

GILBERT A. CURRIE
1923 - 1998

PETER J. KENDALL
1961 - 1999

❧ ❧ ❧

*SERVING CLIENTS*
*WITH DEDICATION*
*SINCE 1905*

❧ ❧ ❧

WWW.CURRIEKENDALL.COM

February 18, 2005

Mr. Jon M. Bylsma
VARNUM, RIDDERING, SCHMIDT
 and HOWLETT, LLP
Bridgewater Place
333 Bridge Street, NW
P.O. Box 352
Grand Rapids, MI 49501 – 0352

VIA FACSIMILE AND FIRST CLASS MAIL

Re:   Goldman v HMS and Givens

Dear Mr. Bylsma:

Co-counsel Stanley K. Hill and I are in receipt of the Answer and Affirmative Defenses your office has filed in the above noted matter. Additionally, we all have received the Court's Order Scheduling Rule 16 Conference, with its direction that we speak to prepare a status report.

I suggest that to arrive at a mutually agreeable report, we each prepare a draft with our respective input and exchange them before we speak on the phone. In the draft I would prepare, I would simply leave blank the portions which call for a statement of legal or factual substantive position, awaiting your input, e.g., statement of plaintiff's case or objections. With those in front of us when we speak, I expect the details can be worked through in the discussion.

There is one area of pre-trial procedure and parties' position to which I request you and your clients give specific thought to before we attempt to prepare the report for submittal to the Court. That is the extent we can agree to discovery of relevant computer software, routines, etc. in an expeditious fashion. Among the items Plaintiff

CURRIE KENDALL ᴾᴸᶜ

February 18, 2005
Page 2

requests from HMS will be the source code and executable code for data base structure and routines related to Healthcare Management Systems applications for: (1) medical records, (2) accounts receivable, (3) admissions, (4), billables, (5) for the following programs:

| | | |
|---|---|---|
| (a) | Executive Summary | MR0E80 |
| (b) | Summary by Financial | MR0E60 |
| (c) | Summary by Service | MR0E50 |
| (d) | MTD Detail by Financial | MR0P60 |
| (e) | MTD Detail by Service | MR0P50 |
| (f) | MTD Detail by Physician | MR0P70 |
| (g) | YTD Detail by Financial | MR0Y60 |
| (h) | YTD Detail by Service | MR0Y50 |
| (i) | YTD Detail by Physician | MR0Y70 |
| (j) | YTD Admission Summary by Financial | MR0AE6 |
| (k) | YTD Admission Summary by Service | MR0AE8 |
| (l) | YTD Admission Summary by Physician | MR0AE7 |

and, (6) for all applications delivered by HHS to the Carbon County Memorial Hospital. As the procedure for discovery of the material is determined, Plaintiff can provide its definitive listing. In corresponding with Mr. Keith Dennen, esq. on behalf o HMS, Mr. Hill proposed a reasonable procedure. That procedure was set forth upon page 3 of Mr. Hill's letter of September 15, 2004. For reference I enclose herein a copy.

We suggest that the procedure outlined on September 15, 2004 be utilized for discovery of source codes, etc. To that procedure, we now suggest that the length of time the materials are to be held by the third party be the duration of the litigation and any applicable appeals and the that the cost of the third party be shared equally between the Plaintiff (1/2) and the Defendants (1/2). Those provisions and other reasonably necessary incidental matters can be made part of a Protective Order. With these matters handled in this way, other interrogatories and requests for production can be set at reasonable limits.

Mr. Hill and I are available to speak with you and other counsel for HMS to the substance of the report and the above requests on Tuesday or Wednesday afternoons (February 22 or 23) or Thursday morning (February 24). We are likewise available Friday morning should it be necessary to have the report filed that day. At you earliest convenience, please contact me with your thoughts on scheduling for our telephone conference next week and the timing of our draft report exchange.

CURRIE KENDALL ᴘʟᶜ

February 18, 2005
Page 3


        Thank you for your cooperation, I look forward to working on the matter with you and to hearing from you soon.


                                            Sincerely,

                                            Peter A. Poznak


Enclosure

cc:    Stanley K. Hill



**Where your legal, business, and technology needs come together.**

# Law Office of Stanley K. Hill, PLC
Intellectual Property Law

2625 Denison Drive, Suite A
Mt. Pleasant, MI  48858-5596
989-774-2900
989-774-2922 (fax)

*skhill@skhiplaw.com*

September 15, 2004

511 Union Street – Suite 1600
Nashville City Center
Nashville, TN  37219

Dear Mr. Dennen:

Thank you for your call on September 7th.  In that call you advised that Health Management Systems appears at a loss to recount the facts and circumstances by which Tom Givens obtained software from Joel Goldman.  There is also a desire to learn from Mr. Goldman details of what was provided to Mr. Givens in 1983.  While these are understandable requests, we need to work out a fair method of exchanging that information which preserves both Mr. Goldman's claim and its proofs.  Although Mr. Goldman takes your follow-up of September 7th as HMS's genuine desire to explore the facts to arrive at an appropriate conclusion, a skeptic might be conclude that HMS's request is a step at acquiring detail for purposes of modification of its products away from Mr. Goldman's components, so that they are "clean" if/when litigation is commenced.  This letter is designed to provide sufficient detail of Mr. Goldman's professional history and software product to impress upon HMS the validity of Mr. Goldman's claims and to outline a procedure for further verification without the necessity for litigation.

*Goldman credentials, history and Medical Records System*

Joel Goldman has been producing healthcare-related computer software since 1977 -- primarily for execution on IBM platforms in hospitals.  In 1979, Mr. Goldman started working with Yale University on a Medical Records Reimbursement System called DRGs.  Between 1979 and 1983 Mr. Goldman continued to work with Yale on DRGs, continued to develop his Medical Records System, and continued to install his Medical Records System in hospitals.  By 1983, Mr. Goldman had designed and implemented a Medical Records System that was one of the first approved DRG Systems running in the U.S.  In the spring of 1983, Mr. Goldman met with Tom Givens who at the time was the CFO of American Medical Centers ("AMC").  At that meeting, Joel installed and tested his Medical Records System and left Mr. Givens a copy of the system on 8 inch diskettes.  Mr. Givens agreed to pay Mr. Goldman $10,000 for each of the AMC sites in which Mr. Goldman's system was to be installed.  Mr. Goldman has never received any payment.

• Page 2                                                                                                September 15, 2004

Much of the computer software in Mr. Goldman's Medical Records System ("GMRS") is substantially similar, if not identical, to software found in one or more of HMS's systems.  There are unique aspects to Mr. Goldman's software that are easily identifiable.  GMRS, as of 1983, contained the following programs:

a.      An Interface Program that would take records from any Hospital Accounts Receivable System and put them in a file called ABSTRACT.
b.      A program that would update the ABSTRACT file and create a Diagnosis Related Group ("DRG")
c.      A program called EXECUTIVE SUMMARY that would produce a 1 page Document for Administration that could be run at any time within a From and To Period.
d.      A series of programs that would Print Activity Reports.  These reports were all by Discharge Date
                i.        By Service Code (Summary & Detail)
                ii.       By Financial Class (Summary & Detail)
                iii.      By Physician (Summary & Detail)
e.      A series of programs that would Print Admission Statistics
                i.        By Service Code (Month to Date and From and To Dates)
                ii.       By Financial Class (Month to Date and From and To Dates)
                iii.      By Physician (Month to Date and From and To Dates)
f.      A series of programs that would select information from the ABSTRACT file all by From and To Dates
                i.        Service Code
                ii.       Financial Class
                iii.      Physician
                iv.      Operating Physician
                v.       Consulting Physician
                vi.      Primary Diagnosis Code
                vii.     Selected Diagnosis Code
                viii.    Diagnosis Group (Not DRG)
                ix.      Primary Procedure Code
                x.       Selected Procedure Code
                xi.      Procedure Group
                xii.     DRG Code
g.      A series of programs that would print Detail Reports of the Following
                i.        Patient Transfers
                ii.       Deaths
                iii.      Left AMA
                iv.      Tissue Disposition
                v.       Zip Code

GMRS had the ability to print statistics not only from the Medical Records standard of Discharge Date, but also by Admission Date.

GMRS had an Index of the diagnosis codes for the purpose of selecting groups.  The Index file is named DIAGNOST.

● Page 3

September 15, 2004

The following are substantially similar, if not identical, reports that can be generated by both GMRS and HMS and the names of the corresponding programs that generate the reports.

| Program Description | GMRS 1983 | HMS |
|---|---|---|
| Executive Summary | HMRE80 | MR0E80 |
| Summary by Financial | HMRE60 | MR0E60 |
| Summary by Service | HMRE50 | MR0E50 |
| MTD Detail by Financial | HMRP60 | MR0P60 |
| MTD Detail by Service | HMRP50 | MR0P50 |
| MTD Detail by Physician | HMRP70 | MR0P70 |
| YTD Detail by Financial | HMRY60 | MR0Y60 |
| YTD Detail by Service | HMRY50 | MR0Y50 |
| YTD Detail by Physician | HMRY70 | MR0Y70 |
| YTD Admission Summary by Financial | HMRAE6 | MR0AE6 |
| YTD Admission Summary by Service | HMRAE5 | MR0AE8 |
| YTD Admission Summary by Physician | HMRAE7 | MR0AE7 |

*Further Exchanges*

As you are aware, in the context of litigation, the content, operation and codes associated with HMS's products since 1983 are relevant and subject to discovery. We acknowledge that in such discovery a Protective Order preventing disclosure or use of specified information outside the context of the litigation would be appropriate. Mr. Goldman is happy to provide additional detail, including program code and database structure without pending litigation provided the exchange of information is mutual and protected by Agreement with provisions comparable to and which may be incorporated within a Protective Order should litigation be necessary. The salient points of such an agreement would include:

1. The information would be provided by Mr. Goldman and HMS to and held by a mutually agreeable third party for purposes of examination by HMS and Mr. Goldman. That party would be sufficiently knowledgeable in computer programming and related activates to allow for him/her to determine whether the required information had been provided.
2. Mr. Goldman and HMS will agree to the details of what information each party will supply.
3. At such time as the third party has possession of all information from both HMS and Mr. Goldman and for a 60 day period thereafter each of HMS and Mr. Goldman, together with such expert(s) as they may retain, shall be entitled to examine and review at the information held by the third party. Neither party shall have access until the other has transferred the information to the third party.
4. Costs or fees incurred by or payable to the third party shall be paid by Mr. Goldman.
5. At the end of the 60 day examination period the third party shall retain the information pending further instructions by agreement of both parties.
6. All confidentially provisions of the Agreement would be applicable to the third party.
7. Each of Mr. Goldman and HMS shall be authorized by the other to examine a customer of the other's application in use to ascertain the components of the applications in the hands of customers.

● Page 4                                                                                    September 15, 2004

     Should your office or HMS have any additional terms to include or suggest a different method of preserving the parties' positions during our discussions, please relay those comments to me. When the points of the Agreement have been worked out, Mr. Goldman will have the Agreement prepared for your review.

     As with your previous response and follow up, Mr. Goldman and I look forward to your reply. To keep these discussions moving, please reply in substance by September 30, 2004.

Sincerely,

Stanley K. Hill
Intellectual Property Attorney