# EXHIBIT J

Loislaw Federal District Court Opinions

COMMUNITIES FOR EQUITY v. MICHIGAN HIGH SCHOOL AA, (W.D.Mich. 2001)

Communities For Equity, et al., Plaintiffs, v. Michigan High School Athletic Association, et al., Defendants.

Case No. 1:98-CV-479

United States District Court, W.D. Michigan,

Southern Division

September 21, 2001

## ORDER

RICHARD ALAN ENSLEN, United States District Judge

In accordance with an Opinion filed this day,

**IT IS HEREBY ORDERED** that Plaintiffs' Renewed Motion *in Limine* to Exclude the Stufflebeam Survey Due to Spoliation of Evidence (Dkt. No. 446) is **DENIED**.

## OPINION

This matter is before the Court on Plaintiffs' Renewed Motion *in Limine* to Exclude the Stufflebeam Survey Due to Spoliation of Evidence. Defendants commissioned a survey for purposes of this litigation, and Plaintiffs seek exclusion of that study because the original survey responses were discarded. The Court will deny Plaintiffs' Renewed Motion *in Limine*.

### I. Facts

In 1999, Defendants commissioned a study for purposes of this litigation. The study, conducted by the Evaluation Center at Western Michigan University (WMU), was to examine the season preferences of high school female athletes in Michigan. Defendants have proposed Dr. Daniel Stufflebeam, Director of the Evaluation Center, and Lead Advisor of this study, as an expert witness at trial to testify to the methodology and results of the survey.

Dr. Stufflebeam and his staff identified a sample of high school girls, and through methods not relevant to this motion, the survey was distributed and returned. The survey instrument asked respondents to identify their grade level and the sports in which they participated in school year 1997-98. (*See* Attachment to Plaintiff's Motion *in Limine* to Exclude the Stufflebeam Survey Due to Spoliation of Evidence (Dkt. No. 402), The Stufflebeam Expert Report, Sports Seasons Survey Final Report, Appendix A: Survey Instrument (hereafter referred to as Evaluation Center, Sports Seasons Final Report or the Report)). Then the survey asks respondents two questions with answer choices of yes, no, or no opinion: whether they think high school boys' and girls' teams should play in the same seasons and whether they think high school sports seasons should be the same as college seasons. *See id.* The survey probes girls' opinions in a few questions that give respondents answer choices along a five-range continuum: e.g., strongly agree, somewhat agree, neutral, somewhat disagree, or strongly disagree, or with answers of favor, oppose, no opinion. *See id.* The final question in the survey gives these instructions: "Please use the space below if you have any comments concerning the scheduling of high school sports seasons." *Id.*

Once the survey responses were returned to WMU's Evaluation Center, 1,131 in total, the data was recorded electronically and stored on a Statistical Package for Social Studies (SPSS) file. (*See* Defendants' Response in Opposition to Plaintiffs' Motion in *Limine* to Exclude the Stufflebeam Survey Due to Spoliation of Evidence (Dkt. No. 415), Ex. 5, Affidavit of Lori Wingate, at ¶ 2.) Lori Wingate, the investigator who worked under the direction of Dr. Stufflebeam, asserts that all electronic data inputs were verified for accuracy and backed up. (*See id.* at ¶¶ 1,3.) Following completion of data entry, Ms. Wingate discarded the hard copy data, which was the questionnaires actually completed by the respondents. (*See id.* at ¶ 4.) Ms. Wingate asserts that the discarding of the questionnaires is consistent with the policy of the Human Subjects Institutional Review Board (HSIRB) at WMU, the body charged with protecting the rights and welfare of human subjects in any research conducted by WMU entities. (*See id.* at ¶¶ 4-5.) Ms. Wingate further asserts that the policy of discarding the original questionnaires was adopted due to WMU's increasing research load and storage space limitations, and that to her knowledge, no one had ever questioned this practice or any other policies in place governing the research of the Evaluation Center. (*See id.* at ¶¶ 2,7.)

The Report generated by the Evaluation Center summarizes the percentages each objective response received. (*See* Evaluation Center, Sports Seasons Final Report.) The Report also contains editorial comments of the writers of the Report, drawing conclusions about the data. At the end, the comments written by the respondents, presumably in response to the last question, are reported in what the writers of the Report assert to be a "complete listing of all the survey comments, exactly as they were written by the athletes." (*See id.*) The comments, however, have been grouped by the writers of the Report into what the writers categorize as the "primary issue addressed by the respondent." *See id.* From the Court's reading of the Report, and the parties' pleadings and attachments, there appears to be no way to match up what comments originally went with what objective answers, e.g., there appears to be no way to distinguish the grade level and sport(s) played by the maker of any individual comment.

Plaintiffs object to the introduction of the Report and Dr. Stufflebeam's testimony on the Report because they are unable to review the original questionnaires, which they assert was covered under their discovery request and/or the expert disclosures required by the Court. Plaintiffs further object because they assert generally that without the original questionnaires, they suffer prejudice. Specifically, Plaintiffs seem to indicate that there is no way for their expert to discern why those girls who answered that they oppose changing the seasons have that opinion. Therefore, Plaintiffs argue, they are prevented from effective cross-examination of the conclusions that Dr. Stufflebeam drew from the data. As a result, Plaintiffs ask the Court to impose the sanction of exclusion of the survey and related testimony based on the Court's power to sanction discovery violations or its inherent powers to ensure fairness and efficiency in litigation.

Defendants respond that Plaintiffs' discovery request never originally asked for anything that would include the original questionnaires. Moreover, Defendants assert, they were under no duty to take steps to assure that a third party, the Evaluation Center, preserved the original questionnaires when all data has been preserved. Defendants argue that there is no information that the original questionnaires would have possessed that Plaintiffs do not now have.

## II. Analysis

The Court exercises discretion over matters involving the admissibility and relevancy of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). Abuse of discretion was found to be the proper standard of review where a district court ordered a dismissal sanction under Federal Rule of Civil Procedure 37 for pre-litigation destruction of evidence. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th

Cir. 1994) (holding that district court abused its discretion because Rule 37 was not implicated by the conduct, since it was not yet covered under a discovery order). Other circuits have held that imposition of sanctions for spoliation of evidence or refusal to impose sanctions is reviewed for abuse of discretion. *See, e.g., Ingham v. United States*, 167 F.3d 1240, 1246 (9th Cir. 1999); *Bass v. General Motors Corp.*, 150 F.3d 842, 851 (8th Cir. 1998).

In addition to Federal Rule of Civil Procedure 37, which gives courts the power to sanction parties who fail to respond to a discovery request due to spoliation of evidence, courts have found the inherent power to sanction parties for spoliation that has occurred prior to a discovery request or order because the inability to obey an order was self-inflicted. *See* 7 Moore's Federal Practice § 37.120 (Matthew Bender 3d ed.), at 37-177 nn. 4-5, citing, among others, *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266-69 (8th Cir. 1993). *Cf. Beil,* 15 F.3d at 552 (reversing dismissal because it was improperly based on Rule 37 and did not invoke inherent authority). However, courts will generally not impose a significant sanction for spoliation of evidence unless there is prejudice to the opposing party. *See* 7 Moore's Federal Practice at § 37.120.

The Court's first task is to determine whether Defendants were under a Rule 37 duty to produce the original, hard copy questionnaires. There is some dispute or confusion as to what Plaintiffs' original discovery request said.[fn1] The Court finds that Plaintiffs' discovery request read: "All Documents which Defendants reviewed, used, or relied upon in formulating their opinions or which they may use at trial. Such production should include all underlying data (e.g., interview questions and response notes) for Dr. Stufflebeam's survey report."

Plaintiffs argue that the reference to "Dr. Stufflebeam's survey report" includes the original questionnaires, presumably meaning that "all underlying data" would include the original questionnaires. The Court can see, however, how reasonable people could differ on this meaning. "Underlying data" could mean the data from which the Report was generated — the data in its electronic form — or the hard copy data contained on the original questionnaires. As such, it would be unfair to hold Defendants to the meaning that Plaintiffs would attribute to the request, and the Court finds that this request did not cover the original questionnaires with sufficient specificity such that Defendants' failure to prevent their destruction is a violation of discovery rules.

Plaintiffs further argue that the required expert disclosures covered the original questionnaires. The Court does not agree. The parties in this case were required to provide each other with five areas of information about their expert witnesses, instead of the information usually required by Federal Rule of Civil Procedure 26(a)(2). *See* Order dated May 27, 1999 (Dkt. No. 124) (referencing the Joint Status Report dated Dec. 1, 1998). These five areas were: (1) name, address, and phone number of each expert; (2) the subject matter about which expert is expected to testify; (3) the substance of facts and opinions to which the expert is expected to testify; (4) a summary of the grounds for each opinion; and (5) a copy of the expert's resume or curriculum vitae. Areas (3) and (4), which come the closest to encompassing the original questionnaires, do not include them because they only require Defendants to disclose what conclusions Dr. Stufflebeam drew from his survey and "the grounds" for his opinion. The grounds for his opinion are included in the Report, which are the summarized data results and the compilation of comments as electronically entered. The Court believes that no logical reading of these required areas would give Defendants a reason to believe that they had to turn over the original questionnaires to Plaintiffs.

These conclusions, however, do not end the inquiry. The question remains whether Defendants knew or should have known to preserve the original questionnaires, especially given that Defendants commissioned the study for the purpose of this litigation and knew the results were to

be offered as evidence at trial.

One of the two cases Defendants cite is *United States v. Koch Indus., Inc.*, which includes a definition of spoliation of evidence. *Koch*, 197 F.R.D. 463, 482 (N.D.Okla. 1998). "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim. A litigant has a duty to preserve evidence that it knows or should know is relevant to imminent or ongoing litigation." *Id.* (citations omitted). While Defendants argue that they safeguarded and preserved the survey evidence at issue here because the Evaluation Center's policy of electronic recording is sufficient, the Court finds differently. It is reasonable for Plaintiffs to want to confirm that actual responses were received, even though the Court has no reason to doubt the representations of the Evaluation Center. Further, Plaintiffs may have been able to draw inferences about what comments came from girls of a particular grade, of a particular sport, etc., that are now apparently unavailable to them. The Court finds that Defendants had a duty to ensure that the Evaluation Center saved the original, hard copy questionnaires, even though their failure in this duty may have been inadvertent and not in bad faith. Thus, spoliation of evidence has occurred. As such, the Court must determine if Plaintiffs have suffered prejudice by the destruction of the original, hard copy questionnaires and what, if any, sanction should be imposed upon Defendants.

The Sixth Circuit has said that there are evidentiary and deterrent rationales behind punishing spoliation of evidence. *Welch v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988) (applying Kentucky law but also looking at general principles in law regarding spoliation).[fn2] "The evidentiary rationale springs from the common sense notion that a party with notice of an item's possible relevance to litigation who proceeds nonetheless to destroy it is more likely to have been threatened by the evidence than a party in the same position who does not destroy it[.]" *Id.* at 1246. The deterrent rationale seeks to prevent parties from destroying evidence that could be relevant and to serve as a penalty by placing the risk of erroneous judgment on the one who created the risk. *Id.*

Resulting penalties vary along a continuum of fault. *Welch*, 844 F.2d at 1246. Some courts do not sanction when destruction of evidence is unintentional or satisfactorily explained. *Id.* at 1246 (citing *INA Aviation Corp. v. United States*, 468 F. Supp. 695, 700 (E.D.N.Y. 1979), *aff'd*, 610 F.2d 806 (2d Cir. 1979)). Others apply sanctions to parties who know or should have known prior to litigation or to discovery requests that the evidence they are discarding will be relevant or discoverable. *Welch*, 844 F.2d at 1246. "Whether the defendant's actions may result or must result in an inference that the missing evidence would be unfavorable to the spoliator, or result merely in a burden-shifting presumption, will depend upon a case by case analysis." *Id.* at 1247 (citations omitted).

One available sanction is allowing an inference at trial that were the evidence available, it would have been unfavorable for the spoliating party. The Tenth Circuit has held that as a general rule, the "bad faith destruction of [evidence] relevant to proof of an issue at trial gives rise to an inference that production of the [evidence] would have been unfavorable to the party responsible for its destruction." *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997), *cited in Koch*, 197 F.R.D. at 486. The Tenth Circuit also held, however, that because only the bad faith loss or destruction of evidence will "support an inference of consciousness of a weak case," no adverse inference should arise from spoliation that is merely negligent. *Id.*

But the *Koch* Court also found that it is not necessary to find bad faith to consider other sanctions against a spoliating party. *Koch*, 197 F.R.D. at 482, 486 (finding that while destruction not purposeful, defendants would be subject to sanction because their uncoordinated

retention of documents pertinent to litigation denied plaintiffs information that would have been useful and probative in proving their allegations; the particular sanction was left to be decided after future briefing). In the end, then, courts consider a variety of factors in determining an appropriate sanction, but two factors carry the most weight: the degree of culpability of the party who lost or destroyed the evidence, and the degree of actual prejudice to the other party. *Koch*, 197 F.R.D. at 483.

In cases where physical inspection of a tangible object was crucial to determining critical events and the object was destroyed, experts have been precluded from testifying. *See* 7 Moore's Federal Practice § 37.121 (Matthew Bender 3d ed.), at 37-181 n. 5 (citing *Dillon*, 986 F.2d at 268-69, and *Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982 F.2d 363, 368-69 (9th Cir. 1992)). Both *Dillon* and *Unigard* excluded experts from testifying about their conclusions after inspecting a car and a heater, respectively, after the car was not preserved for inspection and after the heater was destroyed. *See also Roskam Baking Co. v. Lanham Machinery Co., Inc.*, 71 F. Supp.2d 736, 748-49 (W.D.Mich. 1999) (Quist, J.) (applying Michigan law) (where plaintiff razed a fire scene before defendant could investigate, court determined a sanction was appropriate and ordered briefing on what sanction should be imposed).

Plaintiffs are not in the same position as the parties in the above cases. This is a case about whether circumstances as they exist make scheduling girls' sports in different seasons than their male counterparts discriminatory and illegal under the law. The above-cited cases were ones where liability was to be apportioned for a single adverse event or product malfunction. The survey results are not conclusive as to the issue of whether discrimination exists. The evidence destroyed as described above was most likely conclusive to determining liability among the parties.

Moreover, if Plaintiffs feel that the survey results are highly relevant to this litigation, and they have indicated in other pleadings that they do not, nothing precluded Plaintiffs from conducting their own survey of Michigan girls. The Court, of course, realizes that this possibility would only mitigate the fact Plaintiffs cannot tie the comments of the girls to their self-identified characteristics and other objective survey answers in Defendants' survey. Worse, Plaintiffs should not have to conduct their own survey when Defendants bear some level of blame for the originals being gone. But the Court mentions it to point out that, unlike above, Plaintiffs are not without other means to refute or deflate the conclusions of Defendants' expert. For example, Defendants' data does reveal that there is a contingent of girls who do favor switching seasons. Further, those comments are revealed in the Report, and the Court has no reason to doubt the representations of the Evaluation Center that all comments are included. Unlike the parties in the cases where experts were precluded from testifying, Plaintiffs are not at all left without other means by which to attack Defendants' survey.

Finally, there are many other ways to prove Plaintiffs' case that discrimination is present under current scheduling, even if Defendants' survey is accepted as is. In the cases where expert evaluations were precluded, there appears to have been no other way to make a case. The survey is one piece of evidence among many, many pieces that will be presented by the parties in this litigation. The Court would rather admit the survey and have the benefit of whatever value there is to it, especially given that the Court itself will know of these circumstances when according weight to the survey in the Court's findings of fact and conclusions of law.

The Court does not mean to condone Defendants' failure to instruct the Evaluation Center that the original questionnaires should have been preserved. The fact that the Evaluation Center represents that these are standard operating procedures bolsters Defendants' arguments that all

data, especially all comments, are present. But it does not excuse the failure of Defendants to preserve the questionnaires when it specifically commissioned this study for the purpose of litigation. Even if Defendants did not foresee this problem or felt that in the technology age of our world that electronic data input would be sufficient, they should have considered that they probably would have wanted the original questionnaires, too, had tables been turned.

As for other sanctions besides exclusion, Plaintiffs did not request any. Furthermore, the Court does not believe that any other sanctions would fit this unusual situation.

Finally, the Court notes that it could only find one case with facts even resembling the instant case, but for what worth it has, it seems to support the Court's conclusion that no exclusion is warranted here. Where 15 percent of interview results were thrown out by the conductor of a survey done for trademark litigation when it was discovered they were fabricated by interviewers, and replacement interviews were done, the conductor of the survey was still allowed to testify. *Minnesota Mining & Mfg. Co. v. Shurtape Technologies, Inc.*, 2001 WL 530551, at *9 (D.Minn. May 17, 2001). There, the other party apparently did not raise the issue of spoliation as such, even though the other party claimed that the replacement interviews produced significantly different results. *Id.* The conductor of the survey testified that he found there to be no statistical difference in the two sets of data, and the court held that conductor's testimony was both relevant and reliable. Since there is no reason to doubt the Evaluation Center's claim in the Report that all comments were reported, and the only information Plaintiffs are missing are the connections between the written comments and the objective answers provided with each comment, this data is clearly more reliable than the remaining set of data that was admitted in *Minnesota Mining & Mfg*.

### III. Conclusion

Therefore, the Court finds that Defendants' fault in failing to assure that the original questionnaires were preserved is not approaching a level that warrants sanction. Moreover, any prejudice to Plaintiffs is so minimal that it does not warrant exclusion of the Stufflebeam survey and Report, especially given the surveys' role among the extensive evidence that will be presented in this litigation. The Court will deny Plaintiffs' Renewed Motion *in Limine* to Exclude the Stufflebeam Survey Due to Spoliation of Evidence. An order consistent with this opinion will be entered.

[fn1] In Plaintiffs' original motion on this topic (Dkt. No. 402), Plaintiffs submitted a copy of what they represented was the discovery order they served on Defendants, which included a handwritten addition, making the request read, "All Documents which Defendants' *experts* reviewed . . ." (emphasis added to indicate handwritten addition). In Defendants' original response (Dkt. No. 415), they alleged that they did not receive the discovery request with the handwritten addition, and that they believed Plaintiffs altered the document to strengthen their argument with the Court. In Plaintiffs' renewed motion (Dkt. No. 446), Plaintiffs address this accusation and represent to the Court that their file copy of the request included the handwritten addition, and that "[a]pparently, [Defendants' counsel's] copy was not properly conformed before service." Given this statement, the Court finds that the original request was worded without the handwritten addition. While the Court is very concerned about such allegations, this is a matter for another time.

[fn2] The Court has jurisdiction over this matter because of the federal questions involved and because it exercises supplemental jurisdiction over Plaintiffs' related state law claim. As such, federal law on spoliation of evidence will be applied. In researching the issue, the Court found that many federal cases either analyzed state law on

spoliation because the issue often arises in cases in which federal courts exercise diversity jurisdiction, or that courts were not explicit about what law they were applying. However, the Court believes this to be of little consequence in looking at precedent, since this area seems to be governed by some common, general principles.

Copyright © 2006 Loislaw.com, Inc. All Rights Reserved