**D**



Revised July 25, 2002 kds

## AGREEMENT

AGREEMENT made as of the 30th day of July, 2002, by and between **HEALTHCARE MANAGEMENT SYSTEMS, INC.**, a Tennessee corporation, whose address is 3102 West End Avenue, Suite 400, Nashville, Tennessee 37203 ("HMS") and **OKTIBBEHA COUNTY HOSPITAL**, a Mississippi corporation, whose address is 400 Hospital Road, Starkville, Mississippi 39759 ("Hospital").

### PREMISES:

A. HMS develops and licenses proprietary computer software modules designed for the management of hospital records and data and, in addition, sells the computer hardware necessary to operate such software.

B. HMS agrees to license the use of its proprietary software listed on Exhibit A, which is attached hereto and incorporated herein by reference, and Hospital agrees to accept such license.

C. HMS agrees to sell and Hospital agrees to purchase the computer hardware listed on Exhibit B, which is attached hereto and incorporated herein by reference.

D. Hospital agrees that the software and hardware will be installed at the following location ("Installation Site"):

> Oktibbeha County Hospital
> 400 Hospital Road
> Starkville, Mississippi 39759

NOW THEREFORE, for and in consideration of the premises, the payment of the license fee, installation cost and purchase price listed below and the mutual promises and covenants contained herein, the parties agree as follows:

1. **PURCHASE PRICE AND PAYMENT TERMS.** The parties agree to the price to be paid upon the terms set forth on Exhibits A, B, and C, which is attached hereto and incorporated herein by reference.

It is acknowledged by Hospital that purchase price is valid for the Software modules on Exhibit A, on which the down payment is made, and delivered by HMS. If Hospital elects to delay the delivery of the Hardware or any module of the HMS Software or if delivery is delayed through no fault of HMS, beyond twelve (12) months from Contract signing, HMS reserves the right to adjust the price of the monthly software maintenance and to increase the prices of the software to include monthly maintenance fees which would have been charged to the existing client base had the software been installed within the twelve (12) month period. If Hospital does not agree to such adjusted purchase price, this agreement shall be deemed to have been cancelled pursuant to Section 2.20.1 hereof.

DEPOSITION EXHIBIT
Goldman 48

 Revised July 25, 2002 kds

## 2. GENERAL TERMS AND CONDITIONS.

### 2.1. DEFINED TERMS.

2.1.1. The terms "Hospital" and "HMS" are intended to describe parties to the Agreement and are not used in their ordinary context.

2.1.2. Specific words used in this Agreement shall have the meaning assigned to them in the Agreement.

2.1.3. "Employee" means an individual on whose behalf Hospital withholds income taxes or makes contributions under the Federal Insurance Contributions Act or similar statutes.

2.1.4. "Documentation" shall mean user/operator manuals and appropriate record layouts.

2.1.5. "HMS Software" means all software modules listed on Exhibit A and any modifications subsequently made thereto.

2.1.6. "Hardware" shall mean the computer hardware listed and identified on Exhibit B.

2.2. **NOTICES.** All notices given under this Agreement shall be in writing and delivered by a national courier service or by certified mail, return receipt requested, or hand delivered to the address of the recipient shown above. All notices shall be deemed given when actually received or three (3) days after deposit in the U.S. Mail as provided above, all charges prepaid, whichever first occurs. Either party may change its address by notice to the other party, given as provided above.

2.3. **MODIFICATION.** This Agreement may not be modified except by written amendment executed by both HMS and Hospital. No representative of HMS has any authority to bind HMS to any affirmation, representation or warranty other than the express terms of this Agreement.

2.4. **PARTIES BOUND.** This Agreement binds and insures to the benefit of the parties and their respective successors and permitted assigns. This Agreement binds Hospital and HMS and each of its employees, affiliated and subsidiary firms, corporations or other organization with which Hospital may enter a joint venture or other cooperative enterprise which utilizes the HMS Software.

2.5. **ASSIGNMENT.** Neither this Agreement nor the rights and obligations of the parties hereto may be assigned without the prior express written consent of the other party hereto.

The parties agree that the requested consent to any such assignment shall not be unreasonably withheld. Any attempt by Hospital to assign any portion of this Agreement without the prior express written consent of HMS shall render such assignment voidable at the election of either party; provided, however, that either party may assign this Agreement to a parent corporation, subsidiary or affiliate or to an unrelated third party acquiring all or substantially all of the assets of a party.

2.6. **SEVERABILITY.** If any provision of this Agreement is declared to be invalid or unenforceable by a court of competent jurisdiction, such provisions shall be severed here from and the remaining provision shall remain binding with the same effect as if such provisions were deleted.

HMS-Goldman 01152



CONFIDENTIAL

Revised July 25, 2002 kds

**2.7. REMEDIES UPON BREACH.**

2.7.1. Both parties agree that in the event that either should fail to perform according to the terms of this Agreement, the party failing to perform shall be liable to the other party for all attorney fees, court costs and other reasonable expenses incurred by the nondefaulting party in connection with enforcing any part of this Agreement in addition to any other right or remedy to which such party may be entitled.

2.7.2. If Hospital attempts to use, copy, license or convey the HMS Software in a manner contrary to the terms of this Agreement or in competition with HMS or in derogation of HMS' proprietary rights, whether these rights are explicitly stated herein, determined by law or otherwise, HMS shall have, in addition to any other remedies available to it under applicable state or federal laws, the right to injunctive relief enjoining such action, Hospital hereby acknowledging that all other remedies are inadequate.

**2.8. LAW & JURISDICTION.** The Agreement shall be construed and governed under the laws of the United States of America and the State of Tennessee applicable to agreement entered into and wholly performed in such state. The parties further agree that any and all disputes as to enforcement or construction of any of the terms and conditions of the Agreement shall be brought in the state or federal courts in Davidson County, Nashville, Tennessee, which courts shall have exclusive jurisdictions over all such matters.

**2.9. NECESSARY DOCUMENTS.** If additional documents are required or desired to effectuate the terms and conditions of this Agreement (e.g. a financing statement or other instrument necessary to perfect a security interest under the Uniform Commercial Code), Hospital shall execute such documents immediately upon the request of HMS.

**2.10. NOTIFICATION OF INFRINGEMENT CLAIMS.** In the event that suit (or similar claim) is brought against Hospital alleging that the HMS Software infringes upon any copyright or similar interest, Hospital shall immediately notify HMS of the claim, shall give HMS complete information pertinent to the claim, and shall permit HMS (at HMS' sole option) to direct the defense of such claim.

**2.11. INABILITY TO PERFORM.** HMS shall not be liable for any failure to perform under this Agreement if inability to obtain materials, parts, or supplies at reasonable prices or through usual and regular sources or on a timely basis, interruption of transportation, government regulation, labor disputes, strikes, war, fire, flood, accident, or other cause beyond HMS' control makes it impracticable for HMS to perform.

**2.12. TAXES AND RECORDATION FEES.** Prices and fees set forth herein are exclusive of all excise, sales, use, occupational, or like taxes now in force or enacted in the future and, therefore, prices are subject to an increase equal to the amount of any tax HMS may be required to collect or pay upon the sale or delivery of items purchased or licensed hereunder. If a certificate of exemption or similar document or proceeding is to be utilized in order to exempt the sale or license from sales or use tax liability, Hospital will obtain and pursue such certificate, document or proceeding. Hospital shall pay all taxes (however designated, levied, or based on the price or on the product sold or licensed or used under this Agreement, other than taxes based on HMS' income) levied against Hospital or HMS immediately when due. Hospital shall also pay any and all fees incurred by HMS to perfect HMS' security interest hereunder.

Contract # 268

HMS-Goldman 01153

 CONFIDENTIAL

Revised July 25, 2002 kds

2.13. **RISK OF LOSS.** HMS bears risk of loss of any Hardware until such Hardware is delivered to the installation site whereupon the risk of loss passes to Hospital.

2.14. **REMOVAL OF COLLATERAL.** No Hardware or HMS Software sold or licensed hereunder may be used or transported in any manner outside of the territory in which the installation is performed without the advance written permission of HMS, which permission shall not be unreasonably withheld. Hospital agrees that in no event shall the Hardware or HMS Software be used or transported in any manner outside of the United States, its territories or possessions.

2.15. **SECURITY INTEREST RETAINED BY HMS.** HMS reserves and retains a security interest in the Hardware and HMS Software, and in the proceeds of same to secure payment of the total purchase price reflected in Exhibits A and B hereof until fully paid. A copy of this Agreement may be filed at any time as a financing statement to perfect HMS' security interest. If Hospital rejects the Hardware or after accepting, revokes acceptance; Hospital shall have no security interest or title in the Hardware or HMS Software and shall immediately return same to HMS.

2.16. **DEFAULT.** This Agreement shall terminate immediately upon the occurrence of any of the following events of "default" without liability of HMS to Hospital and/or any third parties:

   2.16.1. Hospital fails to pay any installment of the purchase price when due;

   2.16.2. Hospital or HMS fails to comply with each and every other provision of this Agreement within thirty (30) days after receipt of notice of such failure;

   2.16.3. Hospital attempts to assign this Agreement without written approval of HMS;

   2.16.4. HMS receives notice of the insolvency of Hospital.

2.17. **WAIVER.** No provision of this Agreement shall be deemed waived unless such waiver is contained in a written instrument signed by the party to be charged therewith. Should either party waive any individual default by the other party in writing, such waiver shall not be construed as a waiver of such party's rights upon subsequent defaults, whether or not similar.

2.18. **FORFEITURE OF EARNEST MONEY.** If Hospital refuses to accept delivery of the Hardware, or otherwise fails to perform in accordance with the terms of this Agreement, HMS shall retain all sums, if any, paid as Earnest Money. In the event actual damages results from Hospital refusal is less than any Earnest Money paid, HMS will refund the amount above actual damages to the Hospital. Hospital will have no forfeiture of any part of the Earnest Money if such refusal is beyond Hospital control. Retention of Earnest Money shall not be in lieu of any other remedies HMS has in connection with Hospital's default. Should HMS fail to deliver and install the Hardware and HMS Software, or fail to perform initial training sessions within a reasonable time, Hospital shall be entitled to full refund of Earnest Money.

2.19. **DELIVERY.** All Hardware and HMS Software shall be delivered by HMS to Hospital at the Installation Site. Hospital acknowledges that some of the Hardware may be shipped directly from the manufacturer, and Hospital agrees to store same in a reasonable manner until the installation thereof. In no event shall HMS be liable to Hospital or to any other party for any losses or damages attributable to a delay in delivery of any Hardware to be delivered hereunder.

HMS-Goldman 01154

 **CONFIDENTIAL**     Revised July 25, 2002 kds

2.20. CANCELLATION OF AGREEMENT.

    2.20.1. Hospital may, at its option, elect to cancel this Agreement, by notice to HMS, at any time prior to the delivery of any module of the HMS Software described in Exhibit A hereto. In such event, Hospital will pay to HMS only the amount due pursuant to payment terms in Exhibit C with respect to all HMS Software modules delivered with Hospital authorization prior to receipt of such notice.

    2.20.2. HMS may, at its option, cancel this Agreement at any time with thirty (30) days notice should it determine that Hospital cannot provide appropriate facilities at the Installation Site as stated in IBM specifications.

3. HARDWARE PURCHASE PROVISIONS.

    3.1. Hospital hereby buys the Hardware subject to the terms of this Agreement.

    3.2. The purchase price for the Hardware is designated on the attached Exhibit B and shall be paid according to Exhibit C prior to the installation of the Hardware. The purchase price may be adjusted for any hardware in Exhibit B not ordered within three months from the date of this agreement.

    3.3. Title to the Hardware shall remain with HMS until payment of all ordered hardware. Failure to pay pursuant to Exhibit C, or any other term of default shall give HMS the right, without liability, to peacefully repossess the Hardware, with a thirty (30) day written notice, and to avail itself of any other legal remedy.

    3.4. Hospital understands and agrees that the Hardware carries certain manufacturer's warranties. Hospital shall avail itself of all such remedies available to Hospital under such warranties and shall make no claim upon HMS for any defects in same, pursuant to the terms and conditions of the warranty limitations herein contained.

4. INSTALLATION, IMPLEMENTATION AND TRAINING.

    4.1. Upon execution of this Agreement, Hospital shall designate an appropriate senior member of its staff to serve as Hospital's project coordinator ("HPC").

    4.2. Upon execution of this Agreement, HMS shall designate an appropriate project manager to serve as its installation and coordination contact and representative.

    4.3 Upon execution of this Agreement, Hospital and HMS shall prepare a detailed installation schedule showing the scheduled tasks to be accomplished during the installation of each module of the HMS Software to be provided hereunder, and setting forth each party's responsibilities with respect thereto.

    4.4. Coordination of services during the period in which a module is being installed shall be in joint responsibility of the HPC and Project Manager. Coordination of services after installation has been completed is to be the responsibility of the HPC and HMS' Client Support Department.

    4.5. Hospital is responsible, at its expense, for making the alterations to its facilities that are required to accommodate the installation of the Hardware, including the acquisition, installation

 **CONFIDENTIAL**      Revised July 25, 2002 kds

and termination of necessary cabling, and the provision of adequate space and electrical sources as determined to be reasonable and necessary by HMS.

4.6. HMS will assist Hospital in coordination of the installation of the Hardware and in review of site, however, installation of the Hardware at the facilities provided at the Installation Site is not, and shall not be construed to be, a guarantee by HMS that the location is suitable for the proper functioning of the Hardware.

4.7. A written manual for the operation of the Hardware shall be furnished to Hospital by IBM, as provided to HMS by the manufacturer of each item of the Hardware.

4.8. Installation and implementation will proceed according to the schedules referred to herein. The project timetable identifies responsibilities for Hospital and HMS. Where possible, discrete responsibilities for tasks are identified. Performance will be monitored by both written and oral progress reports. The reports shall be submitted routinely throughout the duration of the project on a schedule mutually agreeable to Hospital and HMS. Review of work completed to date by Hospital shall be completed at these progress meetings. Responsibility for project management is shared by Hospital and HMS.

4.9. HMS will use reasonable efforts for accurate conversions for achieving balanced results. All Hospital conversions involving financial files or sub-systems will have an allowable error threshold of $0.00, as long as the file was in balance prior to the conversion. HMS and Hospital will agree on reports to determine balance condition. If the file conversion results in an out of balance, it will be corrected. If a zero threshold cannot be attained, Hospital and HMS will agree upon an allowable error rate. There will be no charge to the Hospital for the out of balance file due to an HMS error.

4.10. HMS commits to working closely with iTera Inc. to facilitate the installation of their AS/400 Tools. If needed, they will provide DDS, source for conversion programs, and technical assistance. If any programming changes must take place in the HMS software, HMS will make its best efforts to address programming changes. Programming changes will be limited to not deleting a Journal Receiver that is shared by both iTera and HMS. Professional fees for technical assistance will be billed as incurred at the then-current rate. HMS will assist with the mappings necessary to install the following products over a time period of two years:

- High Availability
- Update While Active
- Convert While Active
- Data Reporter
- Reorganize While Active
- Training and Testing Environments
- Purge and Archive
- IT Inspector

## 5. INSTALLATION, TRAINING EXPENSES, AND OUT-OF-POCKET FEES.

5.1. Installation and training for the applications purchased on this original Agreement and for the first twelve (12) months from the date of the Agreement will be billed at HMS' standard rates therefore which are currently $95 per hour plus out-of-pocket expenses. HMS reserves the right to change its standard installation and training rates upon thirty (30) days notice to Hospital, after the initial twelve (12) month period. If financing the implementation portion of this contract,

HMS-Goldman 01156

 **CONFIDENTIAL**

Revised July 25, 2002 kds

proof of financing must be given to HMS prior to commencement of any implementation activities.

5.2. All payments shall be made in U.S. Dollars within thirty (30) days after the date of invoice. HMS reserves the right to add an interest charge not exceeding 1% per month, or the maximum amount allowed by applicable law, whichever is less, for failure to make payment within thirty (30) days after the invoice date. Such invoices will also include the appropriate taxes (sales, excise, occupation or like taxes) and recordation fees.

5.3. Out-of-pocket expenses for the installation and training of Hospital will be billed monthly as incurred. Copies of receipts per HMS travel policy will be submitted. HMS out-of-pocket expenses for travel and living will be capped at $103,975. HMS will agree to take into consideration renting cars with unlimited mileage versus driving personal cars accruing mileage charges. The least expensive method will be utilized. Mileage charges will not exceed those deemed allowable by the IRS. Rental cars will not exceed a mid-size car unless a group of four or more individuals are driving together. Hospital will be responsible for hotel room charges and taxes only. All other hotel expenses (movies, room service, damages) will be the responsibility of HMS. Per Diem for installation staff will be $32 for the period of installation for applications listed on Exhibit A.

6. **SOFTWARE LICENSE AGREEMENT.**

   6.1. **MODULES LICENSED.** HMS hereby grants Hospital a perpetual, nontransferable and nonexclusive license to use the HMS Software.

   6.2. **GUARANTEE OF TITLE.** HMS represents, covenants, and warrants that it has all rights to the HMS Software, including all necessary rights in any software owned by others which is embodied in the HMS Software, necessary to grant the license provided herein and that the HMS Software will not infringe upon or violate any copyright or other property right of any third party.

   6.3. **PROPRIETARY RIGHTS.**

      6.3.1. Hospital recognizes and acknowledges that the HMS Software, system documentation manuals and other materials supplied by HMS to Hospital are subject to the proprietary right of HMS. Hospital agrees with HMS that the HMS Software, documentation and all information or data supplied by HMS in machine-readable form or otherwise are the property of HMS, are protected by civil and criminal laws, including the copyright laws of the United States, are valuable to HMS, and that their use and disclosure must be carefully and continuously controlled. Hospital further understands that operator manuals, training aids and other written materials, whether created by HMS or others are also subject to the copyright laws of the United States. HMS agrees that Hospital can reproduce any portion of the Operating Manuals, training aids, and other written materials required for internal hospital use.

      6.3.2. HMS retains title to the HMS Software, documentation, information or data furnished by HMS in machine-readable form, and the training materials provided by HMS. HMS does not retain title to operator manuals and other material bearing the HMS' copyright, but these items shall not be copied except as provided herein.

HMS-Goldman 01157

 **CONFIDENTIAL**

Revised July 25, 2002 kds

6.3.3. Hospital shall keep each and every item to which HMS retains title free and clear of all claims, liens and encumbrances except those of HMS, and any act of Hospital purporting to create a claim, lien or encumbrance on such item shall be void.

6.4. **RESTRICTIONS OF USE.** The HMS Software and other items supplied by HMS hereunder are for the sole use of Hospital, supporting only terminals operated by Hospital at the Installation Site unless otherwise agreed by HMS in writing. Hospital shall not use licensed software in a service bureau, network time-sharing, multiple CPU, or a multisite arrangement.

6.4.1. Hospital shall use the HMS Software only for the management of records and data of the facility or facilities as shown on Exhibit E, and can be updated upon notification by Hospital. Hospital may permit line access to data and the placing and reviewing of orders by physicians affiliated or associated with Hospital.

6.4.2. Hospital agrees that while this license is in effect, or while it has custody or possession of any property of HMS, it will not (i) copy or duplicate, or permit anyone else to copy or duplicate, any physical or magnetic version of the HMS Software in machine-readable form except for Hospital's own use; (ii) create or attempt to create, or permit others to create or attempt to create by reverse engineering or otherwise, the source programs or any part thereof from the object program or from other information made available under this license or otherwise (whether oral, written, tangible, or intangible).

6.4.3. The HMS Software shall be used only on a single central processing unit or mainframe (the "CPU"). Hospital shall advise HMS in advance of the location of the CPU. Use of the HMS Software shall consist either of copying any portion of the HMS Software from storage units or media into the CPU, or the processing of data with the HMS Software, or both. All programs, documentation, and materials in machine-readable form supplied under this license shall be kept in a secure place, under access and use restrictions satisfactory to HMS, and not less strict than those applied to Hospital's most valuable and sensitive programs. The HMS Software may be temporarily transferred to another CPU while the specified CPU is undergoing repairs.

6.4.4. The HMS software may be copied in whole or in part for use by Hospital only for operations backup or archive purposes. These copies of all or any part of the original HMS Software shall be marked with the copyright notice designated by HMS along with a notice that the HMS Software is proprietary and the property of HMS, its agents or licensors. Hospital shall maintain records of the number and location of all copies and shall make these records available to HMS upon written request.

6.5. **INSPECTION.** To assist HMS in the protection of its proprietary rights, Hospital shall permit representatives of HMS to inspect at any reasonable time any location at which items supplied by HMS hereunder are being used or kept by or under the authority of Hospital. All inspections shall be accomplished pursuant to applicable federal and state confidentiality and privacy laws and the confidentiality provisions of this Agreement.

6.6. **INDEMNIFICATION AGAINST INFRINGEMENT CLAIMS.**

HMS will indemnify, defend, and hold harmless Hospital against any and all liability or claims of liability, whether or not the claim is successful, to third parties for, on account of, or related to the violation of such third parties' patent, copyright, trademark, license, trade secret, or other proprietary rights in connection with the HMS Software. HMS will, at its own expense, defend

HMS-Goldman 01158

 **CONFIDENTIAL**

Revised July 25, 2002 kds

any action brought against Hospital to the extent such action is based upon any claim, suit or proceeding that any aspect of the HMS Software infringes upon any patent, copyright, trademark, licenses, trade secrets or other proprietary right. Hospital agrees to notify HMS immediately of any infringement claim of which Hospital has actual knowledge. Hospital agrees that HMS shall have the exclusive right to control such defense, and Hospital shall, in no event, settle any claim, lawsuit or proceeding without HMS' prior written approval. In the event that a final decision of a court of competent jurisdiction determines that the HMS Software infringes upon the rights of the third party, then HMS shall, at its sole cost and expense and without additional charge to Hospital:

    6.6.1. Procure for Hospital a right to continue to use the HMS Software and pay for any additional fee required for such right; or

    6.6.2. Replace or modify the HMS Software so as to be non-infringing, provided that such modification or replacement does not adversely degrade the quality of performance or materially affect the functionality, quality or reliability of the HMS Software;

HMS shall have no liability or obligation with respect to any infringement claim based upon the combination of the HMS Software and any other software not authorized by HMS in writing, any use in violation of the terms of this Agreement, or any use other than pursuant to the documentation for the HMS Software. The foregoing states the entire liability and obligations of HMS with respect to infringement of any copyrights, patents, licenses, or trade secrets by the HMS Software or any parts thereof.

7. **CONFIDENTIAL INFORMATION.** HMS shall not divulge or disclose to any third parties any information concerning the affairs of Hospital, which may be communicated to HMS at any time, unless such information becomes publicly available through no fault of HMS. HMS shall not exploit, divulge or disclose to third parties any proprietary systems, application programs or any business or economic information or methods of Hospital of which HMS may gain knowledge in connection with or in the course of performing obligations under this Agreement. HMS shall execute such covenants relating to nondisclosure of Hospital's operations or authorized modifications to the HMS Software as Hospital may reasonably request.

8. **WARRANTY AND LIMITATION OF LIABILITY.**

    8.1. **SOFTWARE ADAPTION.** HMS warrants that the HMS Software will perform according to the specified current version of the documentation. If Hospital notifies HMS in writing of any errors in the HMS Software, HMS will correct the errors at no charge within a reasonable amount of time depending on the nature of errors, so long as Hospital's Software Maintenance Program is in effect.

    8.2. **MODIFICATIONS OF SOFTWARE.** Hospital shall inform HMS in writing of any modifications made to the HMS Software. HMS shall not be responsible for maintaining Hospital's modified portions of the HMS Software. Corrections for difficulties or defects traceable to Hospital's errors or system changes will be billed at HMS' standard time and materials rates then in effect.

 CONFIDENTIAL

Revised July 25, 2002 kds

8.3. LIMITATIONS. EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT OR ANY AMENDMENTS HERETO, HMS MAKES NO WARRANTY EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE.

    8.3.1. HMS SHALL NOT BE LIABLE FOR PERSONAL INJURY OR PROPERTY DAMAGE, EXCEPT PERSONAL INJURY OR PROPERTY DAMAGE CAUSED BY HMS' NEGLIGENCE. HMS SHALL IN NO EVENT HAVE OBLIGATIONS OR LIABILITIES WHICH EXCEED THE TOTAL AMOUNT PAID BY HOSPITAL TO HMS PURSUANT TO THIS AGREEMENT. HMS SHALL NOT BE LIABLE FOR ANY SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOSS OF PROFITS OR OTHER ECONOMIC LOSS.

    8.3.2. HMS MAKES NO WARRANTIES WITH RESPECT TO THE HARDWARE. HOSPITAL ACKNOWLEDGES THAT THE MANUFACTURER'S WARRANTIES ON THE HARDWARE ARE PROVIDED TO HOSPITAL AS PART OF THIS AGREEMENT, AND HOSPITAL SHALL TAKE REASONABLE MEASURES TO CONFORM TO ALL REQUIREMENTS TO EFFECT AND ENFORCE MANUFACTURER'S WARRANTIES WITH RESPECT TO THE HARDWARE.

    8.3.3. IN NO EVENT SHALL HMS BE LIABLE FOR ANY LOSS OF DATA WHETHER CAUSED BY THE HARDWARE OR THE HMS SOFTWARE. IF AS THE RESULT OF THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY HMS EMPLOYEE, HOSPITAL IRRETRIEVABLE LOSES DATA, THEN HMS WILL ASSIST HOSPITAL IN RESTORING ALL DATA INPUTTED INTO THE HMS MONITOR SYSTEM SINCE THE LATER OF THE LAST BACKUP OR THE TWENTY-FOUR (24) HOURS PERIOD IMMEDIATELY PRECEDING THE EVENT CAUSING THE LOSS. HOSPITAL ACKNOWLEDGES THAT HMS RECOMMENDS THAT A BACKUP OF ALL DATA BE PERFORMED NOT LESS THAN EVERY TWENTY-FOUR (24) HOURS.

    8.3.4. HOSPITAL ACKNOWLEDGES THAT IT HAS THE RIGHT TO SELECT PERSONNEL FOR TRAINING BY HMS ON THE USE OF THE HARDWARE AND THE HMS SOFTWARE AND THAT HMS IS NOT LIABLE FOR ANY DAMAGES ARISING OUT OF ANY ALLEGATION BY HOSPITAL THAT HMS IMPROPERLY PERFORMED ITS DUTIES UNDER ANY PORTION OF THIS AGREEMENT DEALING WITH TRAINING OF PERSONNEL, EXCEPT FOR ALLEGATIONS THAT HMS FAILED TO CONDUCT ANY SPECIFIC TRAINING SESSIONS PROVIDED FOR UNDER THIS AGREEMENT. HOSPITAL RESERVES THE RIGHT TO REQUEST SPECIFIC IMPLEMENTATION PERSONNEL. HMS WILL DO WHAT THEY CAN TO ACCOMMODATE THOSE REQUESTS.

    8.3.5. HOSPITAL ACKNOWLEDGES THAT THE LICENSED SOFTWARE PROVIDED BY HMS CONSTITUTED PART OF A HOSPITAL INFORMATION SYSTEM TO BE USED BY HOSPITAL, ITS STAFF, EMPLOYEES AND AUTHORIZED AGENTS IN THE PERFORMANCE OR THEIR PROFESSIONAL RESPONSIBILITIES AND IS NO WAY INTENDED

HMS-Goldman 01160



**CONFIDENTIAL**

Revised July 25, 2002 kds

TO REPLACE THEIR PROFESSIONAL SKILL AND JUDGEMENT. HOSPITAL AGREES THAT IT IS SOLELY RESPONSIBLE FOR THE CARE OF ITS PATIENTS AND THAT THE USE OF THE LICENSED SOFTWARE FOR ANY PURPOSE RELATED TO SUCH CARE CANNOT IN ANY WAY BE CONTROLLED BY HMS. HOSPITAL IS RESPONSIBLE FOR VERIFYING THE ACCURACY AND COMPLETENESS OF ANY MEDICAL OR OTHER SIMILAR INFORMATION CONTAINED IN, ENTERED INTO, OR USED IN CONNECTION WITH THE LICENSED SOFTWARE.

8.3.6. HOSPITAL ACCEPTS ALL RESPONSIBILITY FOR DEVELOPMENT AND EXECUTION OF ADMINISTRATIVE PROCEDURES, INCLUDING THE PERFORMANCE OF PERIODIC BACKUPS, SECURITY ADMINISTRATION, OR OTHER PRUDENT BUSINESS PRACTICES NECESSARY TO CONTROL AND MAINTAIN THE INTEGRITY OF HOSPITAL'S DATA.

9. SOFTWARE MAINTENANCE PROGRAM.

   9.1. TERM. The term of the Software Maintenance Program shall commence at the go-live of each HMS Software module when HMS gives notification to Hospital that the applicable Hardware and HMS Software module has been placed in good working order and are ready for daily operation utilizing real patient/hospital data by Hospital and shall continue until terminated as provided herein.

   9.2. FEE. Maintenance fees shall be payable monthly, in advance, in accordance with Exhibit A. HMS shall have the right to increase such fees upon thirty (30) days written notice to Hospital, however no more than once every twelve (12) months, and no more than a general increase to the client of an average annual increase of seven percent (7%) per annum. In the event that Hospital fails to pay any maintenance fee within thirty (30) days after such payment is due; HMS shall have the right to terminate the Software Maintenance Program immediately upon notice of Hospital.

   9.3. COVERAGE. The Software Maintenance Program shall consist of the following:

      9.3.1. At no additional cost, HMS shall make available to Hospital all enhancements of the HMS Software, when applicable, which HMS makes generally available to its other customers. HMS acknowledges that Federal and State government may mandate compliance by Hospital with various regulatory requirements, some of which may necessitate modifications to the HMS Software. Therefore, HMS will, as far as technically feasible and within a reasonable period of time, modify the specific software capabilities of the HMS Software to comply with mandated Federal and State requirements to which it is subject. HMS will agree to provide the programming necessary for compliance with the Health Insurance Portability and Accountability Act (HIPAA). HMS will comply with the standards set forth in the Standard Transaction Code Sets, Privacy, and Security. In no way is HMS responsible for any operational compliance issues or enforcement with Hospital. HMS reserves the right to charge Hospital for additional function capabilities beyond that documented in the Documentation Manuals, however, HMS will exercise its best efforts to minimize any such charges by proration between/among the number of HMS hospitals actually contracting for the modifications at the time the fee is established. Any corrections or alterations to or new versions of the HMS Software that HMS shall provide under this

HMS-Goldman 01161

 **CONFIDENTIAL**

Revised July 25, 2002 kds

Agreement shall be limited to the delivery on one (1) copy of such HMS Software and documentation to Hospital. Hospital agrees to install all HMS Software improvement and modification releases no later than sixty (60) days after Hospital's receipt thereof or a mutually agreed upon time thereafter.

9.3.2. HMS will correct or replace the HMS Software and/or provide services necessary to remedy any programming error which is attributable to HMS and which significantly affects the use of the HMS Software. Such correction, replacement or serves will be promptly accomplished after Hospital has identified and notified HMS of any such error in accordance with HMS' reporting procedures. Hospital agrees to provide HMS with file data, as requested, and with sufficient support and test time on Hospital's computer system to duplicate the problem, certify that the problem has indeed been fixed.

9.3.3. The number of hours per month of software supported for non-warranty questions by HMS staff, including telephone, travel and on-site support is listed on Exhibit A for each module of HMS Software. All Hospital requested support exceeding the accumulative number of hours per month will be billed monthly at HMS' then-current standard hourly rate as provided in Section 9.5. below.

9.3.4. If the problems originate in Hospital's computer network or in software not covered by this Article or result from modifications to the Licensed Software made by anyone other than HMS, HMS' responsibility shall be limited to providing assistance and advice to enable Hospital to determine appropriate remedial action to be taken by Hospital or authorized personnel (not by HMS) to resolve such problems.

9.3.5. In as much as software maintenance is related to hardware, support fees per Exhibit A are based on Hospital's acquisition of central server hardware from HMS. HMS reserves the right to alter fees for the software maintenance program if Hospital acquires the central server hardware from a third party service.

**9.4. TERMINATION.** As a condition to the continuation of the Software Maintenance Program, Hospital will maintain its operating system at the level currently supported by HMS.

9.4.1. The Software Maintenance Program shall immediately terminate upon the termination of the License Agreement.

9.4.2. Termination of the Software Maintenance Program shall immediately terminate the License Agreement.

9.4.3. The Software Maintenance Program may be terminated by either party upon the expiration of the initial one (1) year term, provided that at least sixty (60) days prior written notice is given to the other party; or

9.4.4. The Software Maintenance Program may be terminated by either party upon thirty (30) days prior written notice if the other party has materially breached the provisions of this Agreement and has not cured such breach within such notice period.

9.4.4.1. Following termination of the Software Maintenance Program, HMS shall immediately invoice Hospital for all accrued fees and charges and all reimbursable expenses, and Hospital shall pay the invoiced amount immediately upon receipt of such invoice.



Revised July 25, 2002 kds

    9.4.5    Migration of HMS Software to another computer, except as provided in Section 6.4.3, by any third party shall immediately terminate the Software Maintenance Program.

**9.5. ADDITIONAL CHARGES.** Corrections for difficulties or defects traceable to Hospital errors or system changes will be billed at HMS' then-current standard time and material rates. Corrections for difficulties or defects traceable to HMS errors or system changes will not be billed to Hospital. HMS' current standard hourly rate is $95 per hour. The rate for modification, enhancement or other Hospital requested changes to the HMS Software will be the then current published programming rate. The current rate is $125 per hour.

**9.6. OUT-OF-POCKET EXPENSES.** Hospital shall reimburse HMS for any out-of-pocket expenses incurred at Hospital's request, including travel to and from the Installation Site, lodging, meals, telephone and shipping as may be necessary in connection with duties performed under this Agreement by HMS. Copies of receipts per HMS travel policy will be submitted.

**10. SURVIVAL.** NOTWITHSTANDING any termination of this Agreement or this license granted hereunder, the provisions set forth herein concerning the nondisclosure of information – either of the confidential information of Hospital by HMS or the disclosure of the proprietary rights and information concerning the HMS Software by Hospital – shall survive any such expiration or termination.

**11. MISCELLANEOUS.** This Agreement, including attachments which are executed, represents the entire, complete and exclusive statement of the terms and the agreement between the parties, superseding any and all understandings, prior representations and agreements, whether oral or written, and all other communications relating to the subject matter of this Agreement. Hospital agrees that is has read this Agreement, understands it, and agrees to be bound by its terms and conditions. Special provisions of this Agreement are provided in Exhibit F. Each party signing this Agreement has the full authority to bind the principal.

    **IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their duly authorized representatives as of the day and year first written above.

| Oktibbeha County Hospital | Healthcare Management Systems, Inc. |
|---|---|
| Signature: *[signature]* | Signature: *[signature]* |
| Print Name: RICHARD G. HILTON | Print Name: John R. Doss, III |
| Title: ASSOCIATE ADMINISTRATOR/CFO | Title: Executive Vice President |
| Date: July 30, 2002 | Date: July 25, 2002 |

HMS-Goldman 01163