UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JOEL GOLDMAN,

        Plaintiff,

v.

HEALTHCARE MANAGEMENT
SYSTEMS, INC. and THOMAS E. GIVENS,

        Defendants.

_____/

Case No.  1:05-CV-35

Hon. Richard Alan Enslen

**OPINION**

This matter is before the Court on Plaintiff Joel Goldman's Motion for Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and 17 U.S.C. § 502. Plaintiff has not requested a hearing on the Motion and the Motion has been fully briefed. Therefore, the Court discerns no reason to hear oral argument. W.D. MICH. LCIVR 7.2(d).

**I.     BACKGROUND**

In approximately 1983,[1] Plaintiff and Defendant Thomas Givens met in Nashville. Defendant Givens' then employer, American Medical Centers, Inc. ("AMC"), was interviewing third-party software vendors and considering their software. Plaintiff installed computer software on AMC's computer at this meeting and provided Defendant Givens with a copy of the program. Plaintiff and Defendant Givens discussed the possibility that AMC would acquire a licence which would allow AMC to use the program. Plaintiff alleges that after this meeting, he did not hear from Defendant Givens again and assumed that AMC decided not to use the program. Defendant Givens alleges that after the meeting, he and Plaintiff continued to communicate about the program and

---

[1] Plaintiff and Defendants appear to differ on the exact date; Plaintiff claiming spring 1983, and Defendants claiming "approximately 1982." (Defs.' Resp. 2.)

discussed problems with the program and solutions to those problems. Defendant Givens also alleges that he used certain source code from the program,[2] with Plaintiff's consent and knowledge, as he continued to modify AMC software. Defendant Givens left AMC to form his own company, Advanced Information Concepts (later becoming Health Management Systems, Inc.("HMS")). Defendant Givens then acquired the software at issue from the successor to AMC and offered it for sale through what is now HMS.

Defendants argue that although Plaintiff's name appeared in the source code at issue, no copyright symbol and no date accompanied the name, although an IBM copyright notice did appear. Plaintiff argues that his name, valid copyright symbol and date appeared in the code. It is undisputed that neither Plaintiff nor Defendants can produce the original source code at issue. Plaintiff alleges that since approximately 1983, Defendants have been using his copyrighted source code in their programs without his knowledge. Defendants allege that Plaintiff's source code was in the public domain.

Defendants further argue that Plaintiff was on notice as early as 1985 or 1986 that Defendants were using source code from the original software installed by Plaintiff in 1983. Plaintiff claims that he was unaware of the infringement until 2004, when HMS's database format was provided to Plaintiff. Thereafter, Plaintiff obtained copyright registrations for the 1979 and 1997 versions of his software, and filed this lawsuit alleging copyright infringement, unfair competition, and a violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202(a) and (b).

---

[2]"The source code of a program is its operating instructions in a format that a computer programmer can read and use to maintain and revise a program." *Liu v. Price Waterhouse LLP*, 302 F.3d 749, 752 n.1 (7th Cir. 2002).

**II.     CONTROLLING STANDARDS**

Section 502 of the Copyright Act allows courts to grant injunctions to "prevent or restrain infringement of a copyright." 17 U.S.C. § 502. Determining whether a preliminary injunction shall issue under Federal Rule of Civil Procedure 65 is a question that resides squarely within the Court's discretion. *Lexmark Int'l Inc. v. Static Control Components Inc.*, 387 F.3d 522, 532 (6th Cir. 2004); *ACLU v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004); *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004). In exercising such discretion, the Sixth Circuit Court of Appeals has instructed:

> It is well-settled that district courts evaluating requests for preliminary injunctive relief must consider four interrelated criteria:
>
> > 1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;
> > 2) Whether the plaintiff has shown irreparable injury;
> > 3) Whether the issuance of a preliminary injunction would cause substantial harm to others; [and]
> > 4) Whether the public interest would be served by issuing a preliminary injunction.

*N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989); *see also Lexmark Int'l Inc.*, 387 F.3d. at 532; *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 476 (6th Cir. 2003). These criteria are meant to serve as factors to be balanced, rather than rigid, elemental requirements that must be satisfied in every case. *Jones*, 341 F.3d at 476; *In re DeLorean Motors Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

The first factor—the likelihood or probability of success on the underlying merits—is the most critical inquiry of the four criteria. *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). More specifically, "[i]n the copyright context, much rests on the first factor because

3

irreparable harm is presumed once a likelihood of success has been established and because an injunction likely will serve the public interest once a claimant has demonstrated a likelihood of success in this setting." *Lexmark Int'l Inc.*, 387 F.3d at 532-33 (citations omitted). Further, there is no reason that such a "similar presumption of irreparable harm should not apply to claims under the DMCA." *Id*. at 533 (citations omitted).

**III.    DISCUSSION**

Courts are counseled to make specific findings as to each factor, unless discussion of fewer factors will dispose of the issue. *G & V Lounge Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994). Faithful to Sixth Circuit precedent, the Court has determined the following.

    **A.    Whether Plaintiff Has Shown a Strong or Substantial Likelihood or Probability of Success on the Merits**

Plaintiff argues he is likely to succeed on the merits because he is the undisputed author and owner of the source code at issue and his copyright was properly affixed to the source code. Most importantly, Plaintiff argues success is likely because Defendant Givens has admitted to receiving the program from Plaintiff in 1983 and thereafter using the source code without authorization or payment to Plaintiff. However, Defendants respond that Plaintiff is not the undisputed author of the source code, and the use of any source code was fair use as a result of conversations between Plaintiff and Defendant Givens in the early 1980's. Further, Defendants argue the statute of limitations was triggered as early as the mid-1980's when Plaintiff became aware that Defendants were using the source code. Defendants also argue that Plaintiff cannot produce (nor are Defendants in possession of) the original source code at issue and therefore, Plaintiff will be unable to establish that Plaintiff's notice of copyright or the date was affixed to the source code.

4

The issues raised above do not give rise to a presumption of success on the merits in favor of Plaintiff. Plaintiff cannot produce the original source code at issue in the action, and the statute of limitations may bar this claim as the infringement began approximately 24 years ago and Plaintiff may have been aware of the infringement long before this action was filed.[3] Thus, the Court does not believe Plaintiff has shown a strong or substantial likelihood or probability of success on the merits. This does mean that Plaintiff will not be able to ultimately succeed on its claims at some point in the proceeding. The Court simply believes that at this point, Plaintiff has not demonstrated a strong or substantial likelihood or probability of success on the merits entitling him to the extraordinary relief requested. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *see Edward Rose & Sons*, 384 F.3d at 261 (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)) (findings of fact and conclusions of law made when considering a preliminary injunction motion are not binding when later considering the merits).

### B.   Whether Plaintiff Has Shown Irreparable Injury

As Plaintiff's have not shown that there is a substantial likelihood of success on the merits, there is no presumption of irreparable harm such that Plaintiff should be entitled to a preliminary injunction. *Lexmark Int'l Inc.*, 387 F.3d at 532-33. Plaintiff has not alleged any other facts in support of a finding that an irreparable injury has occurred. Therefore, the Court finds Plaintiff has not shown he has suffered irreparable harm.

---

[3] Both Plaintiff and Defendants submitted simultaneous motions for summary judgment to the Court for consideration and rely on the arguments made therein. The Court denied both of those motions for summary judgment, finding that the record was replete with disputed issues of material fact.

### C. Whether the Issuance of a Preliminary Injunction Would Cause Substantial Harm to Others

Regarding whether the issuance of a Preliminary Injunction would cause substantial harm to others, Plaintiff claims Defendants' clients will not suffer any harm from the Preliminary Injunction because Defendants would not have to delete the allegedly infringing source code from their programs or their clients' programs. Defendants respond that a Preliminary Injunction would harm Defendants' current clients because Defendants would be enjoined from modifying or updating the software that its current clients use which is necessary for the servicing of customers. Defendants also assert that this Preliminary Injunction would harm their negotiations with prospective clients and further claim that as no infringement has occurred, the Preliminary Injunction would serve no purpose.

The Court finds Plaintiff's Preliminary Injunction would likely not harm others, as Plaintiff's request would allow Defendants to offer maintenance and support to its current customers in the ordinary course of business. Further, Plaintiff's request would allow Defendants and its current customers access to the program at issue. Therefore, the Court finds Plaintiff has shown there is no potential harm to others by enjoining Defendants.

### D. Public Interest

As Plaintiff has not shown that there is a substantial likelihood of success on the merits, there is no presumption that an injunction would serve the public interest by preventing copyright infringement. *Id*. Plaintiff has not alleged any other particular facts in support of a finding that the public interest would be served by the entry of an injunction. As a result, the Court deems the public interest would not be served by enjoining Defendants.

## IV. CONCLUSION

Therefore, since the Court has found that Plaintiff has only shown there would be no harm to others with the entry of a Preliminary Injunction, the Court will deny Plaintiff Joel Goldman's Request for Preliminary Injunction. An Order consistent with this Opinion shall issue.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>December 8, 2006 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |