UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL GOLDMAN,

    Plaintiff,

             Case No. 1:05-cv-035

-v-

             HONORABLE PAUL L. MALONEY

HEALTHCARE MANAGEMENT
SYSTEMS, INC. and THOMAS E. GIVENS,

    Defendants.


OPINION AND ORDER DENYING DEFENDANTS' MOTION (DKT. NO. 161) IN
LIMINE/*DAUBERT* MOTION ON PLAINTIFF'S EXPERT NORMAN JACOBSON


OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION (DKT. NO. 155) IN LIMINE/*DAUBERT* MOTION ON PLAINTIFF'S DAMAGES,
CLAIMS AND EXPERT (VINCENT A. THOMAS) REPORT AND TESTIMONY


ORDER DENYING DEFENDANTS' EMERGENCY MOTION (DKT. NO. 248) TO EXCLUDE
TESTIMONY AND EVIDENCE FROM PLAINTIFF'S EXPERTS AT THE MARCH 18 THROUGH
MARCH 20 *DAUBERT* HEARINGS


OPINION AND ORDER DENYING DEFENDANTS' MOTION (DKT. NO. 163) IN LIMINE ON
GOLDMAN'S COPYRIGHT CLAIMS


ORDER DENYING IN PART DEFENDANTS' MOTION (DKT. NO. 202) FOR LEAVE TO FILE
REPLY BRIEF TO PLAINTIFF'S MOTIONS IN LIMINE REGARDING COPYRIGHT CLAIMS
AND MATERIALS DEPOSITED WITH THE COPYRIGHT OFFICE


OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION (DKT. NO. 200) IN
LIMINE TO EXCLUDE EVIDENCE AND EXPERT TESTIMONY OF HMS "RE-WRITE" COSTS


    Before this Court are multiple motions to exclude evidence from trial and related motions.

Although this action was filed more than three years ago, the parties filed these and a number of other

similar motions in the weeks just prior to the final pretrial conference, which was scheduled for February

19, 2008.


I.  LEGAL FRAMEWORK

The underlying complaint alleges copyright infringement of a computer program.  In order to prevail on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) copying by the defendant of protected components of the copyrighted material.  *Feist. Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003).

A.  FEDERAL RULES OF EVIDENCE

Under the Federal Rules of Evidence, all relevant evidence is admissible and evidence that is not relevant is not admissible.  FED. R. EVID. 402.  The rules define "relevant evidence" as any "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.  Evidence that is relevant may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the evidence."  FED. R. EVID. 403.  The Supreme Court has remarked on several occasions that the standard for relevancy is liberal.  *See e.g. Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).  *See also Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006) (noting same).

B.  MOTION IN LIMINE

The Federal Rules of Evidence do not specifically contemplate the use of motions in limine, however, their use has evolved under the federal courts' inherent authority to manage trials.  *See Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).  *See also Figgins v. Advance America Cash Advance Ctrs. of Michigan, Inc.*, 482 F. Supp.2d 861, (E.D. Mich. 2007) (explaining that such motions find some basis for authority under Rule 103(c), which provides that jury proceedings should be conducted "so as to prevent inadmissible evidence from being suggested.").  The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay and ensure an even-handed and

expeditious trial and to focus the issues the jury will consider.  *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999) (holding federal rules of evidence, civil procedure and criminal procedure and interpretive rulings of the Supreme Court all encourage parties to use pretrial procedures, such as motions in limine, to narrow the issues and minimize disruptions at trial); *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).  The decision to grant or deny a motion in limine is within a trial court's discretion.  *United States v. Certain Lands Situated in the City of Detroit*, 547 F.Supp. 680, 681 (E.D. Mich. 1982).  Such motions serve important gatekeeping functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury because it would not be admissible for any purpose.  *Jonasson,* 115 F.3d at 440.

C.  *DAUBERT* MOTION

The admission or exclusion of expert testimony is within the broad discretion of the trial court. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)*, Barnes v. Kerr Corp*, 418 F.3d 583, 588 (6th Cir. 2005).  Federal Rule of Evidence 702 governs the admissibility of expert testimony.  The rule provides

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  As amended, the rule reflects the United States Supreme Court's decisions in *Daubert* and *Kumho*.  *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, (6th Cir. 2007).  In *Daubert*, the Supreme Court charged trial courts with the task of "gatekeeping" to protect juries from being exposed to misleading or unreliable scientific testimony.  509 U.S. at 592-593, 597.  *Kumho* clarified the gatekeeper role applied to all expert testimony, not just testimony based in science.  526 U.S. at 147.

As gatekeeper, a trial judge should ensure that expert testimony is both relevant and reliable. *Kumho*, 526 U.S. at 147 (quoting *Daubert*, 509 U.S. at 589).  Initially, the witness should be qualified as

an expert by reference to his or her knowledge, skill, experience, training, or education. *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). The requirement that testimony be relevant stems from the portion of Rule 702 which demands the testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. The relevancy inquiry is often described as ensuring there is a "fit" between the testimony and the issue to be resolved by the trial. *Id.*; *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999) (citing *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993)).

The reliability requirement focuses on the methodologies and principles which form the basis of the expert's testimony. *Greenwell*, 184 F.3d at 497 (citing *Bonds*, 12 F.3d at 556). The Supreme Court grounded the reliability requirement in the opening phrase of Rule 702, "scientific, technical, or other specialized knowledge." *Daubert*, 509 U.S. at 589-590. "In order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method. Proposed testimony must be supported by appropriate validation-i.e., 'good grounds,' based on what is known." *Id.* at 590. There is no single criterion for determining whether a specific methodology is reliable. *Pride*, 218 F.3d at 577. In *Daubert*, the Supreme Court provided a non-exhaustive list of factors which may inform a trial judge's decision. Those factors include (1) whether the theory or technique can be or has been tested, (2) whether the theory has been subjected to peer review and publication, (3) whether there is any known rate of error or standards controlling the technique's operation, and (4) whether the theory or technique enjoys general acceptance within the relevant community. *Daubert*, 509 U.S. at 592-594.

In *Kumho*, the Supreme Court clarified the test for reliability should be flexible. 529 U.S. at 150. The factors listed in *Daubert* are not a definitive checklist and the reliability inquiry must be tied to the facts of a particular case, the nature of the issue, the expert's particular area of expertise, and the subject of his or her testimony. *Id.* "The focus, of course, must be solely on the principles and methodology, not

on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595; *Bonds*, 12 F.3d at 556 (holding that by defining reliability in terms of scientific validity, the Supreme Court instructs trial courts to focus on the validity of the principles and methodologies underlying the testimony and not to be concerned with the reliability of the conclusions generated by valid methods, principles and reasoning). However, where the conclusions offered by the expert are not supported by the data upon which the expert relies, a trial court need not admit the expert's testimony. *GE v. Joiner*, 522 U.S. 136, 146 (1997) (explaining that *Daubert* does not require a court to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of an expert" and citing *Turpin v. Merrell Dow Pharm., Inc.*, 959 F.2d 1349, 1360 (6th Cir. 1992)).

Under Rule 702, a trial court must determine whether proposed testimony is (1) scientific, technical or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. *Daubert*, 509 U.S. at 592. The party offering the expert testimony must prove its admissibility by a preponderance of the proof. *Id.* at 593 n. 10 (citing FED. R. EVID. 104(a) and *Bourjaily v. United States*, 483 U.S. 171, 175-176 (1987)); *Pride*, 218 F.3d at 578. Importantly, trial courts have additional guidance, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate ways of attacking shaky, but admissible evidence." *Daubert*, 509 U.S. at 596.

## II.  ANALYSIS

On February 21, 2008, after the final pretrial conference, this Court issued an Omnibus Order (Dkt. No. 198) regarding issues raised at the pretrial conference. The order scheduled an evidentiary hearing of Defendants' Motions in Limine/*Daubert* Motions for March 18, 19, and 20, 2008. (Omnibus Order ¶ 5). The order further stipulated "Plaintiff shall have until the close of business on February 29, 2008 to

file responses, including any supplement to the response already filed." (*Id.*).  The order further required all responses to pending motions be timely filed. (*Id.* ¶ 6). Plaintiff filed a response to Defendants' motion regarding Mr. Jacobson (Dkt. No. 161) on February 19 and did not file any supplement to the response.

On February 27, 2008, Defendants' filed amended motions regarding both experts: Jacobson (Dkt. No. 207) and Thomas (Dkt. No. 208).  Defendants sought to preclude the experts from testifying on additional areas not covered by the earlier motions.  Plaintiff filed a response (Dkt. No. 217) to Defendants' motion regarding Mr. Thomas on February 29, 2008 at 11:39 p.m.  Plaintiff filed a Motion (Dkt. No. 218) to Strike Defendants' Amended Motions as untimely.  Defendants filed a response (Dkt. No. 225) in which they pointed out that Plaintiff's response to their Motion regarding Mr. Thomas was not timely.  On March 14, 2008, this Court issued an order (Dkt. No. 246) striking Defendants' amended motions and striking Plaintiff's response to Defendants' Motion regarding Mr. Thomas.

A. <u>Defendants' Motion in Limine/*Daubert* Motion on Plaintiff's Expert Norman Jacobson (Dkt. No. 161)</u>

Because Plaintiff did not timely file his response, it has been stricken.  Generally, a court may not grant a dispositive motion simply because the adverse party neglected to file a response.  *See Carver v. Bunch*, 946 F.2d 451 (6th Cir. 1991).  Although Defendants' motion was not filed under either Rule 12 or Rule 56 of the Federal Rules of Civil Procedure, as noted by Plaintiff at the hearing and in response to numerous other motions, many of Defendants' motions in limine have the practical effect of a dispositive motion.  Given the ramifications of granting Defendants' motion, this Court examines the motion to ensure Defendants' have fulfilled their burden in establishing that the evidence should be excluded.

Mr. Jacobson opines that there are substantial similarities between Plaintiff's computer program and Defendant HMS's computer program and that those similarities suggest that HMS's program was derived from Plaintiff's program.  (Dkt. No. 162-5, Exhibit D to Defendants' Brief in Support - Jacobson

Report at 12).  Defendants seek to exclude Mr. Jacobson's report on the basis that his opinions are irrelevant, unreliable and prejudicial because none of the data used by Mr. Jacobson contained the required copyright notices.  Put another way, Defendants argue Mr. Jacobson's testimony, which Plaintiff will use to establish the second element of a copyright claim, should be excluded because Plaintiff cannot establish the first element of a copyright claim.

Defendants' motion (Dkt. No. 161) is DENIED.  Defendants have not established Mr. Jacobson's testimony should be excluded as inadmissible evidence through a motion in limine.  Neither have Defendants established Mr. Jacobson's testimony is irrelevant or unreliable such that it should be excluded under *Daubert* and *Kumho*.  Mr. Jacobson has not offered an opinion regarding the first element of a copyright claim.  Certainly, Mr. Jacobson's opinions and conclusions are relevant only if Plaintiff establishes a valid copyright.  In the event Defendants establish that Plaintiff has no valid ownership of a copyright, Plaintiff's copyright claim would be dismissed and Mr. Jacobson's testimony would be irrelevant.

Pursuant to its power to control the order of proof, See FRE 104(b), and recognizing that Jacobson's testimony is relevant only if the first element of Plaintiff's cause of action is sufficiently proved for jury consideration, the Court orders that Plaintiff shall introduce its evidence of the first element of his cause of action before offering Mr. Jacobson as a witness.

B.  Defendants' Motion in Limine/Daubert Motion on Plaintiff's Damages Claims and Expert (Vincent A. Thomas) Report and Testimony (Dkt. No. 155)

Defendants advance separate legal and factual reasons for excluding portions or all of Mr. Vincent Thomas' testimony.

1.  Legal Reasons to Exclude Portions of Mr. Thomas' Report

Defendants argue Mr. Thomas calculates damages using facts or assumptions which are legally

unsupportable for four separate reasons.

      a.  <u>Statute of Limitations</u>

Mr. Thomas calculates damages based on the number of installations of HMS software.  (Dkt. No. 158 - Exhibit B to Defendants' Brief in Support - Thomas Report Supplement at 3).  In exhibits 3 and 4, Mr. Thomas provides a chart identifying the number of contracts per year, beginning in 1985, in which Defendants installed the allegedly infringing software.  (*Id.*).  Mr. Thomas calculates damages using all installations of software between 1985 through 2005.

The parties dispute the applicable statute of limitation.  Defendants argue the statute of limitations under the Copyright Act is three years and therefore conclude Plaintiff cannot recover damages for infringements which occurred more than three years prior to the date upon which the complaint was filed. Defendants allege Mr. Thomas calculates damages based on acts of infringement which occurred beyond the three years prior to the date when the complaint was filed.  Defendants argue the three year statute of limitations claim applies to both Count I (copyright) and Count III (Digital Millennium Copyright Act). Plaintiff responds that Defendants are merely rearguing their earlier summary judgment motion, which Judge Enslen already rejected.[1]  Plaintiff alleges he first learned about the infringement in 2004.  Plaintiff asserts Mr. Thomas should be allowed to testify to the amount of damages that Plaintiff has sustained since

---

[1]Defendants filed an earlier motion for summary judgment raising the three year statute of limitation in a different context.  *See Goldman v. Healthcare Mgt. Sys., Inc.*, No. 1:05-cv-035, 2006 WL 3589069 (W.D. Mich. Dec. 8, 2006) (unpublished order denying plaintiff's motion for partial summary judgment and defendants' motion for summary judgment).  In that motion, Defendants alleged Plaintiff was on notice of infringement in 1997.  Defendants argued in that motion that the three-year statute of limitations prevented Plaintiff from maintaining the suit. Plaintiff responded that the incident in 1997 did not put him on notice of copyright infringement. Plaintiff also argued he should, at the very least, be able to pursue the acts of infringement which occurred during the three years prior to when the complaint was filed.  Judge Enslen denied Defendants' motion finding the record "rife with disputed facts" including "whether Plaintiff was on notice that his copyright was being infringed upon such that the statute of limitations began to toll in 1997 or earlier."  *Id.*

1983.

The complaint was filed on January 13, 2005.  The relevant statute provides:

(b) Civil Actions - - No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.

17 U.S.C. § 507(b).  The Sixth Circuit Court of Appeals has interpreted section 507(b) to bar recovery for damages in copyright infringement actions accruing more than three years prior to the date the complaint was filed.[2]  *Hoste v. Radio Corp. of America*, 654 F.2d 11 (1981) (6th Cir. 1981) (per curiam); *Phoenix Publ'g Int'l, Inc. v. Mutual of Omaha Ins. Co.,* No. 1:99-cv-92, 2000 WL 33173916 (W.D. Mich. April 5, 2000) (McKeague, J.) ("the law clearly indicates the statute of limitations bars recovery of any claims based upon damages accruing more than three years before the *complaint* was filed" (emphasis in original)).  *See also Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004) ("because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before the suit was filed, but does not preclude infringement claims that accrued within the statutory period.") and *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 390 (6th Cir. 2007) (quoting *Bridgeport Music*).

Under the applicable statute of limitations, as interpreted by the Sixth Circuit, Plaintiff may recover damages only for infringements occurring on or after January 13, 2002, but cannot recover damages for

_____

[2]This Court is bound to follow the Sixth Circuit.  The Sixth Circuit's interpretation of section 507(b) is the majority approach, with only the Seventh Circuit reaching a different interpretation.  *See generally,* Bart A. Starr, *Fixing Copyright's Three-Year Limitations Clock: The Accrual of an Infringement Claim under 17 U.S.C. 507(b)*, 78 Wash. U. L.Q. 623 (2000). Mr. Starr argues courts have not interpreted the statute as written, which allows recovery for damages for all copyright claims so long as the complaint is filed within three years from when the claim accrues.  A claim "accrues," according to Mr. Starr, when the claim is discovered. Under Mr. Starr's proposal, a copyright suit could be initiated today for an infringement dating back to the time when the Copyright Act was passed, or earlier if the Act was retroactive.  Such approach runs squarely against the twin justifications for statutes of limitations that are eloquently summarized by Mr. Starr.  *Id.* at 628.

infringements occurring before that date.  Mr. Thomas' damage calculation improperly includes infringements outside the three year statute of limitations. Such damage calculations are barred from presentation to the Jury.

Plaintiff's assertion that my colleague's prior ruling precludes defendant's argument here misses the mark.  Judge Enslen made no ruling on Plaintiff's alternative argument that regardless of when he was placed on notice, he should be able to pursue acts of infringement which occurred during the three years prior to the filing of the complaint.  As noted, that is the law.  See Hoste.  In addition, the four squares of Judge Enslen's opinion do not finally adjudicate Plaintiff's right to pursue claims outside that three year period.  This is not the same argument Defendants raised in their prior motion for summary judgment.

### b. Pre-Complaint Interest

Mr. Thomas includes prejudgment interest in his calculation of damages.  (Thomas Report Supplement at 3).  Mr. Thomas states in a footnote that it is his understanding that the "appropriateness and amount of a pre-judgment interest award are a matter for the court and/or jury to determine."  (*Id.* n. 4).

The parties dispute whether there is a legal basis for awarding prejudgment interest and whether the court or the jury would make such an award.  Defendants also argue there is no legal basis for awarding "pre-complaint" interest (prejudgment interest).  Defendants also argue Mr. Thomas has inflated his damages estimates by including pre-complaint interest.  Defendants contend (1) there is no legal basis for awarding prejudgment interest from 1985 to 2005, (2) there is no basis for awarding prejudgment interest from 2005 forward and (3) if there is a legal basis, the issue will be decided by the court and not by the jury.  Rather than precluding prejudgment interest as a matter of law, Plaintiff argues the Sixth Circuit explicitly allowed an award of prejudgment interest in copyright cases.  Plaintiff points to other jurisdictions which have found a court may award prejudgment interest under the Copyright Act.  Plaintiff

10

argues the Sixth Circuit has found the decision to award prejudgment, in other contexts, are decisions to be made by the trier of fact, citing *Treev, Inc. v. MSX Int'l*, 34 F.App'x 219, 222 (6th Cir. 2002).

The lead case in the Sixth Circuit on prejudgment interest under the Copyright Act is *Robert R. Jones Assocs., Inc. v. Nino Homes*, 858 F.2d 274 (6th Cir. 1988). *Robert J. Jones* has been cited as holding that prejudgment interest is not available under the Copyright Act. *See Powell v. Penhollow*, No. 06-10760, 2007 WL 4513119 at * 7 n. 7 (5th Cir. Dec. 21, 2007). In *Robert J. Jones*, Judge Martin, writing for a unanimous panel, stated

> The Copyright Act neither expressly allows nor prohibits awarding prejudgment interest in copyright infringement cases.  As we stated in *Bricklayers*, '[i]n the absence of legislative direction, the Supreme Court, directed that the decision to grant or deny prejudgment interest should hinge on whether to do so would further the congressional purposes underlying the obligations imposed by the statute in question.'"

*Id.* at 282 (citations and alterations omitted) .  The Circuit panel vacated an award of prejudgment interest by the district court explaining "we believe the measure of damages applied in this case is clearly sufficient to promote innovation in architectural design and deter unauthorized exploitation of someone else's creative expressions."  *Id.*

The citation and footnote after this statement are confusing.  After the explanation of why the court vacates the award of prejudgment interest, the court immediately cites a case from a district court in Illinois, *Baldwin Cooke Co. v. Keith Clark, Inc.*, 420 F.Supp. 404, 409 (N.D. Ill. 1976), with the "accord" signal.  The accord signal may be used to show that the law of one jurisdiction is in accord with the law of another.[3]  The Bluebook: A Uniform System of Citations 46 (Columbia Law Review Ass'n et al. eds.,

---

[3]More typically the accord signal is used before a second source when more than one source clearly supports a proposition, but the text quotes or refers to only one source.  The Bluebook: A Uniform System of Citations 46 (Columbia Law Review Ass'n et al. eds., 18th ed. 2005); Black's Law Dictionary, 17 (8th ed. 2004).  Here, the Sixth Circuit did not cite any other authority.

18th ed. 2005).  In *Baldwin Cooke*, the district court, after discussing the difference between the Copyright

Act and the Patent Act, denied a request for prejudgment interest because "the cumulative award of

defendant's profits and plaintiff's damages is sufficiently severe as to deter others from like conduct."  420

F.Supp. at 409.   The district court then stated "Plaintiff recognizes that its request is addressed to our

discretion."  *Id.*  Immediately after its summary of the holding in *Baldwin Cooke*, the Sixth Circuit inserts

a footnote.   In footnote eight, the circuit court compares the Copyright Act, which does not mention

prejudgment interest, to the Patent Act, which does explicitly authorize prejudgment interest.  *Id.* n. 8.  In

that footnote, the court infers that Congress believed the discretionary authority to award costs and attorney

fees would be sufficient to enable courts to enhance the deterrent force of the Copyright Act in situations

involving flagrant conduct.  *Id.*

  The statement in the footnote is dicta at best.  The holding in *Baldwin Cooke* cannot fairly be

interpreted as concluding that prejudgment interest is not available under the Copyright Act.  The results

in *Robert J. Jones* on appeal and in *Baldwin Cooke* both hinge on the trial court's discretion to award

prejudgment interest when necessary to deter copyright infringement.

  There is no consensus in the federal circuits as to whether prejudgment interest may be awarded

under the Copyright Act.  *See Powell,* 2007 WL 4513119 at * 7 n. 7 (noting a circuit split and explaining

that the First Circuit found it was not an abuse of discretion to fail to award prejudgment interest in a

copyright case, the Sixth Circuit found prejudgment interest was not available in *Robert R. Jones*, and the

Seventh, Ninth and Tenth Circuits have held that the Copyright Act permits an award of prejudgment

interest).  The Seventh, Ninth and Tenth Circuits have found that prejudgment interest may be awarded

on claims for copyright violations.  *See Polar Bear Prods. Inc. v Timex Corp.,* 384 F.3d 700, 718 (9th Cir.

2004); *McRoberts Software, Inc. v. Media 100, Inc.,* 329 F.3d 557, 572 (7th Cir. 2003); *Kleier Advert., Inc.*

*v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1041 (10th Cir. 1990).  The First Circuit upheld a decision by a

district court finding district court did not abuse its discretion when it declined to award prejudgment interest under the Copyright Act because the damages award was entirely for disgorged profits and reasoning that, unlike actual damages, the plaintiff would not have had the funds and deserved no compensation for loss of use of the money. *John G. Danielson, Inc. v. Winchester-Conant Props., Inc.,* 322 F.3d 26, (1st Cir. 2003). Similarly, the Fourth Circuit, in an unpublished opinion, declined to award prejudgment interest because the award of actual damages plus profits sufficiently compensated for the loss and because the infringement was unintentional. *Payphone, Inc. v. Executives Unlimited of Durham, Inc.*, 1991 WL 64957 at *4, 931 F.2d 888 (4th Cir. 1991) (unpublished table opinion).

This Court concludes prejudgment interest is a remedy available under the Copyright Act. The majority of circuits who have examined the question of whether court may award prejudgment interest under the Copyright Act have found that such an award is permissible. The Sixth Circuit's opinion does not clearly and unambiguously state that prejudgment interest is not allowed. Rather, it vacates an award of prejudgment interest because the damages awarded were sufficient to serve as a deterrent. In the event that actual damages, profits, costs and attorney fees are insufficient to provide the sort of deterrent intended by Congress, this Court should be able to award prejudgment interest.

Defendants have the better argument on the last two points raised. Assuming such an award was authorized, Plaintiff could only be awarded interest on the actual damages found by the trier of fact. As noted above, Plaintiff can only recover damages for acts of infringement which occurred within three years of the filing of the complaint. Therefore, the interest calculation should reflect only those infringement claims between 2005 and 2002. Courts, not juries, decide whether to award prejudgment interest in copyright actions. The courts who have looked at the issue generally conclude the decision to award prejudgment interest is within the discretion of the trial court. *See Polar Bear Prods.*, 384 F.3d at 718;

13

*Kleier Advert.*, 921 F.2d at 1040.[4]  As a result, Mr. Thomas is precluded from testifying on this issue before the jury.  If Plaintiff wishes to take the testimony of Mr. Thomas outside the presence of the jury on this issue, he may do so to preserve proofs should damages be awarded.

### c.  Recovery of Damages and Profits Under the Copyright Act(Count I)

Defendants argue Mr. Thomas overstates damages by calculating a double recovery.  Defendants contend Plaintiff may recover actual damages and Defendants' net profits that are not taken into account when calculating actual damages.  Plaintiff responds that the jury may consider evidence of both actual damages and lost profits.  Plaintiff argues the jury is entitled to hear evidence regarding both.  Plaintiff argues any concern about double recovery should be solved through an appropriate jury instruction.

Under the Copyright Act, a copyright owner is entitled to recover "actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504(b).  The provision has the effect of preventing a double recovery.  *Robert R. Jones*, 858 F.2d at 281.

> Lost profit damages serve to make the copyright owner whole in cases where the infringer's gains exceed the owner's losses.  This is true even if the owner never would have realized the profit made by the infringer; by disgorging any net profits from the infringer, lost profit damages eliminate a major incentive to steal the copyright instead of fairly negotiating for its use with the owner.

*McRoberts*, 329 F.3d at 568.

Paragraph 10 of Omnibus Order renders this issue moot.  *See* Dkt. No. 198.  At the pretrial conference, the parties agreed and stipulated to several legal and factual points.  The parties and this Court agreed that the statute precludes Plaintiff from receiving a double recovery.  The Omnibus Order

---

[4]Plaintiff authority, *Treev, Inc.*,34 F.App'x at 222, is not helpful.  *Treev* was a breach of contract (license) action, not a copyright infringement case, and resolved the question of prejudgment interest under Michigan law, not federal law.

14

memorialized the parties' agreement.  Paragraph 10 of the Omnibus Order states "the statute authorizes

a prevailing plaintiff to recover the greater amount of actual damages or defendant's net profits, but not

both."  *Id.*  Plaintiff is correct that the jury may consider evidence of both actual damages and net profits,

even if a jury could not award both.

        d.  Statutory Damages under the DMCA (Count III)

        Defendants argue Mr. Thomas calculates damages under Count III on the basis of installations

between 1985 and 2005.  Defendants argue the Digital Millennium Copyright Act (DMCA) was not

enacted until 1998 and is not retroactive.  Defendants argue each update of the software over the years is

not a separate infringement of the DMCA because it is not a removal of the (copyright) notice or a

distribution with the notice removed.  Finally, Defendants argue a distribution to multiple third parties does

not constitute multiple violations.

        Plaintiff responds he has already stipulated that the DMCA is not available for dates prior to 1998.

Plaintiff argues Defendants fail to grasp the various ways the DMCA may be infringed.  Plaintiff contends

independent infringements may constitute multiple violations.

        The DMCA prohibits copying false copyright management information and prohibits removing

or altering copyright management information.  The DMCA provides

> (a) False copyright management information - - No person shall knowingly and with intent
> to induce, enable, facilitate, or conceal infringement - -
>         (1) provide copyright management information that is false, or
>         (2) distribute or import for distribution copyright management information that is
>         false.
> (b) Removal or alteration of copyright management information - - No person shall,
> without the authority of the copyright owner or the law - -
>         (1) intentionally remove or alter any copyright management information,
>         (2) distribute or import for distribution copyright management information knowing
>         that the copyright management information has been removed or altered without
>         authority of the copyright owner or the law, or
>         (3) distribute, import for distribution, or publically perform works, copies of works,
>         or phonorecords, knowing that copyright management information has been

15

removed or altered without authority of the copyright owner or the law, knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202. The DMCA also provides for actual or statutory damages for violations of section 1202.

The DMCA states

(c) Award of damages - -
(1) In general - - Except as otherwise provided in this title, a person committing a violation of section 1201[5] or 1202 is liable for either - -
    (A) the actual damages and any additional profits of the violator, as provided in paragraph (2), or
    (B) statutory damages, as provided in paragraph (3).
(2) Actual damages - - The court shall award to the complaining party the actual damages suffered by the party as a result of the violation, and any profits of the violator that are attributable to the violation and are not taken into account in computing the actual damages, if the complaining party elects such damages at any time before final judgment is entered.
(3) Statutory damages - -
    (A) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1201 in the sum of not less than $200 or more than $2,500 per act of circumvention, device, product, component, offer or performance of service, as the court considers just.
    (B) At any time before final judgment is entered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.

17 U.S.C. § 1203.

Section 1203(c)(3) authorizes statutory damages "for each violation" of sections 1201 and 1202, without defining what constitutes a violation. *See McClatchey v. Associated Press*, No. 3:05-cv-145, 2007 WL 1630261 at * 5-6 (W.D. Pa. June 4, 2007). The court in *McClatchey* interpreted the phrase "for each violation" in the statute to mean "each violative act performed by the defendant." *Id.* at * 6. Courts have awarded statutory damages under section 1203(c)(3)(A) for each device sold. *See Sony Computer Entm't*

---

[5]17 U.S.C. § 1201 governs suits involving circumvention of technical measures which protect access or use of copyrighted works such as the use of descramblers or decryption devices. Section 1201 is not at issue here.

*America, Inc. v. Divineo*, 457 F. Supp.2d 957, 966 (N.D. Cal. 2006); *Sony Computer Entm't America, Inc. v. Filipiak*, 406 F. Supp.2d 1068, 1074 (N.D. Cal. 2005). Ruling on the damages available under section 1203(c)(3)(B), *McClatchey* found the act of simultaneous distribution of a copyrighted picture to 1,147 subscribers, where the copyright information had been removed, constituted a single violation rather than 1,147 violations. 2007 WL 1630261 at * 6. That opinion analogized the defendant's conduct to the transmission of a television signal, a single act regardless of the number of viewers. *Id.* (citing *Garden City Boxing Club, Inc. v. Perez*, 2006 WL 2265039 *5 (E.D.N.Y. Aug. 8, 2006) (interpreting the damage provision located in 47 U.S.C. § 605)).

The parties agreed at the pretrial conference that the DMCA does not authorize recovery for any claims prior to its enactment. *See* Dkt. No. 198 ¶ 11. The DMCA authorizes statutory damages for each instance in which a copy of an infringed program was provided to a third party. Unlike a television signal or an AP wire story sent simultaneously to all subscribers, the alleged "violation" here is not a singular, isolated event. Instead, Defendants allegedly provided computer programs at different times, under different circumstances, to multiple hospitals. The computer program in the case at bar might be the same, but the conduct of distributing the software is variable.

Neither party provides any legal authority to resolve the issue of whether a computer program "update" is a distribution of an infringed copyright. The testimony elicited during the three day hearing provided no clear guidance on the issue. Some updates edit, delete or add individual lines of computer programs while others overhaul multiple programs. This Court concludes whether any particular update constitutes a distribution of an infringed copyright is a factual question that should be resolved by a jury. Plaintiff may offer evidence attempting to establish that a particular update constitutes a violation of 17 U.S.C. § 1202.

2. <u>Factual Reasons to Exclude Portions of Mr. Thomas' Report</u>

Defendants next argue Mr. Thomas' report calculates damages relying on six facts or assumptions which have not been established.  Defendants assert Mr. Thomas has intentionally selected certain "facts" favorable to his client and has woven a story which maximizes damages in favor of his client.

a.  <u>Installation License Fee</u>

Defendants argue Mr. Thomas has used the wrong figure to determine the amount of money owed to Mr. Goldman per installation.  Defendants argue Mr. Goldman alleges he was to be paid $10,000 per installation of his software rather than the $14,000 figure used by Mr. Thomas.  In the amended complaint, Mr. Goldman states American Medical Centers was to pay him $10,000 per installation.  (Dkt. No. 158-2 Exhibit A to Defendants' Brief in Support - Amended Complaint ¶¶24 and 25).  Plaintiff responds the amount of the licensing fee is a question of fact.  The parties address the legal basis for awarding license fees in another motion in limine.  *See* Plaintiff's Motion in Limine to Exclude Evidence and Expert Testimony of HMS "Re-Write" Costs, Dkt. No. 200.

In his report, Mr. Thomas justified his use of the $14,000 figure.  He explained

> Goldman testified that under the terms of an agreement with Tom McDougal (who introduced Goldman to certain hospitals who purchased Goldman's software) Goldman received a <u>minimum</u> payment of $10,000 per sale (not including installation costs and expenses) for the installation of Goldman's software system (which included, among other things, the HIS software).  See transcript of the June 14, 2006 deposition of Goldman, pages 53-54 and 61.

Thomas Report at 4 n. 8 (emphasis in original).  Furthermore, Mr. Thomas identifies five reasons he found the $14,000 fee to be reasonable.  *Id.* at 4-5.  Mr. Goldman testified at his deposition that he typically received $10,000 per sale of his software to hospitals plus installation costs and expenses.  (Defendants' Hearing Exhibit 6 Tab 2 - Goldman Deposition at 61).[6]  Mr. Goldman also testified he recalled offering

---

[6]Mr. Goldman's entire deposition was filed as an exhibit to the earlier motions for summary judgment.  *See* Dkt. No. 71.

his software to Mr. Givens for $10,000 per install with Mr. Givens doing the installation.  (Goldman Deposition at 158).  Mr. Givens testified that Mr. Goldman offered to install his software package for $14,000 per installation.  (Defendants' Hearing Exhibit Tab 1 - Givens' Deposition at 55).[7]

This Court finds Mr. Thomas' use of the $14,000 figure for an installation fee is both relevant and reliable.  Mr. Thomas justified his use of that figure.  Defendants are free to offer evidence to contest that amount or subject Mr. Thomas to cross-examination on the issue.

### b.  Proportioning the License Fee

Defendants argue the licensing fee was for the use of multiple programs.  Defendants argue only one of those programs is the subject of this suit, so actual damages (from the licensing fee) should be proportioned to reflect only the program at issue.  Plaintiff does not address this argument in his response brief.  At the hearing, Plaintiff presented evidence showing that Mr. Goldman, in 1995, had asked as much as $25,000 for a smaller module of his programs, including his medical records program, after modifications for a new computer platform.

The fees discussed between Mr. Goldman and Mr. Givens in 1983 were for Mr. Goldman's package of programs, not just the programs that are at issue in this suit.  From Mr. Thomas' report, it does not appear he took that distinction into consideration.  At the same time, this Court has not been informed whether, in 1983, Mr. Goldman was willing to sell only portions of his larger software package.  Accordingly, the basis for Mr Thomas' conclusions cannot be said to be unreliable.  Mr. Thomas explained the basis for his use of the $14,000 fee.  Defendants are free to offer evidence to contest that amount or subject Mr. Thomas to cross-examination on the issue.

### c.  Number of Copyrighted Programs

---

[7]Mr Givens' entire deposition was filed as an exhibit to the earlier motions for summary judgment.  *See* Dkt. No. 69.

Defendants argue Mr. Thomas' calculations assume Plaintiff copyrighted all of the programs. Defendants assert Plaintiff copyrighted, at best, only two of the programs. Defendants concede this argument is the subject of a separate motion in limine. *See* Defendants' Motion (Dkt. No. 163) in Limine Regarding Goldman's Copyright Claims. Because of the overlap between this motion and Defendants' other motion, this portion of Defendants' *Daubert* motion will be resolved through an analysis of Defendants' motion regarding Goldman's copyright claims.

### d.  Mitigation of Damages

Defendants argue Mr. Thomas failed to consider how Defendants attempted to avoid infringing any copyright. Defendants rewrote the medical records program after Plaintiff filed suit to avoid any claim for copyright infringement going forward. Defendants argue Mr. Thomas should have calculated damages to assume Defendants could have rewritten the program earlier and therefore would not have had to pay the licensing fee.

Plaintiff argues the mitigation of damages theory has no basis in law or fact. Plaintiff points out the case cited by Defendants is a patent case, not a copyright case. Plaintiff argues this same claim is the subject of one of Plaintiff's motions in limine. *See* Plaintiff's Motion (Dkt. No. 200) in Limine to Exclude Evidence and Expert Testimony of HMS "Re-Write" Costs. Because of the overlap between this motion and Plaintiff's motion, this portion of Defendants' *Daubert* motion will be resolved through an analysis of Plaintiff's motion regarding the re-write costs.

### e.  Maintenance Fees

Defendants argue Mr. Thomas incorrectly includes maintenance fees in his calculation of damages. Defendants reason that hospitals are the end users of the computer program while Defendant HMS is the provider of the software systems to the hospital. Defendants assert that they, not Plaintiff, would have been maintaining the software systems for the hospitals. Plaintiff responds that this is a question of fact

20

for the jury.  Plaintiff maintains he would have asked for maintenance fees as part of his compensation and that maintenance fees were customary in the industry.  Plaintiff argues, to the extent Defendants would have received the maintenance fees as profits unrelated to the copyright infringement, it is Defendants' burden to establish that fact.  Defendants counter that Plaintiff can only speculate whether he would have received any maintenance fee.

Mr. Thomas' calculations regarding lost maintenance fees are not unreliable.  Mr. Thomas explained his rationale for including maintenance fees and justified how he calculated those fees.  Thomas' Report at 5-6.  Mr Givens testified that maintenance fees were typically ten percent of the license fee per year.  Givens' Deposition at 86.  Defendants are free to offer evidence at trial to contest the amount of fees, to establish that any maintenance fee they received are profits unrelated to copyright infringement or to subject Mr. Thomas to cross-examination on the subject.

### f.  Number of Violations of the DMCA

Defendants argue Mr. Thomas has grossly exaggerated the number of violations under the DMCA. Defendants allege Mr. Thomas, without any basis for doing so, calculates the number of violations by assuming for each installation there would be an annual update for that customer.  Defendants argue updates are not violations of the DMCA.  In addition, Defendants argue there is no factual basis for the assumption that there would be an annual update for each installation at a hospital.  Plaintiff responds that Mr. Goldman will testify that an annual update or even several updates per year are customary.  Plaintiff argues this is also a question that should be decided by the jury.

Mr. Thomas' calculations regarding the number of violations of the DMCA are not unreliable.  Mr. Thomas explains the basis for his calculations, identifying the number of installations and assuming an annual update for each installation.  As indicated above, whether any particular update is a violation of the DMCA will be resolved by the evidence presented at trial.  Similarly, both sides are free to present

evidence regarding whether and how often updates are customary.

Defendants' motion (Dkt. No. 155) is GRANTED IN PART and DENIED IN PART. This Court finds no support for the legal basis for some of Mr. Thomas' damage calculations. Mr. Thomas may not testify as to damages resulting from copyright infringements occurring outside the statute of limitation. Mr. Thomas may not testify as to prejudgment interest. Mr. Thomas may testify regarding both actual damages suffered by Plaintiff as well as the net profits gained by Defendants. Mr. Thomas may testify as to damages under the DMCA regarding each update which Plaintiff can establish constitutes a distribution of an infringed copyright. This Court concludes the factual problems with Mr. Thomas' testimony alleged by Defendants and discussed above are not reasons to limit his testimony. The factual problems discussed above are issues that should be resolved by the jury after cross-examination of Mr. Thomas.

C. Defendants' Emergency Motion to Exclude Testimony and Evidence from Plaintiff's *Daubert* Experts at the *Daubert* Hearings (Dkt. No. 248)

Defendants filed an emergency motion the day before the *Daubert* hearings were scheduled to begin. Defendants argue Plaintiff failed to follow this Court's order (Dkt. No. 228) requiring the parties to disclose in detail the testimony and other evidence expected to be introduced at the *Daubert* hearing. Defendants sought to preclude Plaintiff from offering any testimony from his expert witnesses, by way of deposition or in person.

Plaintiff did not call any live witnesses at the *Daubert* hearing. Plaintiff attempted to offer a number of exhibits. Defendants were afforded an opportunity to review those exhibits. This Court resolved Defendants' objections to certain exhibits at the hearing. Accordingly, Defendants' motion (Dkt. No. 248) is DENIED AS MOOT.

D. Defendants' Motion in Limine on Goldman's Copyright Claims (Dkt. No. 163)

Defendants move to preclude Plaintiff from introducing evidence establishing an ownership of a

22

valid copyright because the evidence does not support a claim that certain computer programs or medical records reports were copyrighted. Defendants argue the earliest copies of the computer programs which lack copyright notices combined with Plaintiff's statement that he never removed copyright notices constitutes a sufficient basis for this Court to preclude Plaintiff from introducing evidence that he did include copyright notices on his programs.

Generally, motions in limine address specific evidentiary issues of a prejudicial nature. *Provident Life & Accident Ins. Co. v. Adie,* 176 F.R.D. 246, 250 (E.D. Mich. 1997) (explaining that motions in limine typically raise the issue of whether certain evidence should be excluded due to the possibility of prejudicing the jury or as the result of some earlier ruling by the court); *Certain Lands*, 547 F.Supp. at 681. "Orders in limine which exclude broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) (involving a situation where the parties conducted a trial under an order prohibiting references to three pending cases involving the same plaintiff and three other similarly situated defendants).

Factual questions should not be resolved through motions in limine. *Provident Life*, 176 F.R.D. at 250 (denying a motion in limine to bar defendant from raising certain defenses at trial because there were factual disputes as to whether defendant had knowledge of the defenses at the time it denied plaintiff his insurance benefits and holding that plaintiff should have raised the issue as a motion for summary judgment). *See Mavrinac v. Emergency Med. Ass'n of Pittsburgh,* No. 04-1880, 2007 WL 2908007 at *1 (W.D. Pa. Oct. 2, 2007) ("motions in limine are inappropriate vehicles to seek a final determination with respect to a substantive cause of action and should not be used as a substitute for a motion for summary judgment" (citing 21 C. A. Wright & K. W. Graham, Jr., *Federal Practice and Procedure* § 5037.18 (2d ed. 2005))); *NRDC v. Rodgers*, No. Civ-S-88-1658, 2005 WL 1388671 at *1 n.2 (E.D. Cal. June 9, 2005) ("motions in limine address evidentiary questions and are inappropriate devices for resolving substantive

issues" (citing 75 Am.Jur.2d *Trial* § 99 (2004)));  Other district courts have reached similar conclusions.  *See Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 WL 343178 (S.D. Ohio Feb. 7, 2008); *Figgins* 482 F. Supp.2d at 869-871; *Hi Limited P'ship v. Winghouse of Florida*, No. 6:03-cv-116, 2004 WL 5486964 (M.D. Fla. Oct. 5, 2004); *Boggs v. Divested Atomic Corp.*, No. C-2-90-840, 1997 WL 33377790 (S.D. Ohio March 24, 1997).

To establish ownership of a valid copyright, the author must show (1) originality in the author, (2) copyrightability of the subject matter, (3) citizenship status of the author such as to permit a claim of copyright, and (4) compliance with the applicable statutory formalities.  *Atari, Inc. v. Amusement World, Inc.*, 547 F.Supp. 222, 225 (D. Md. 1981) (citing 3 *Nimmer*, The Law of Copyright, § 13.01(A)[8]).  The form of notice of copyright required by statute includes three elements: (1) a copyright symbol "©", the word "copyright" or the abbreviation "copr.", (2) the year of the first publication of the work, and (3) the name of the owner of the copyright or an abbreviation by which the owner can be recognized.  17 U.S.C. § 401(b).

Plaintiff, in an affidavit, states he is certain "that many, if not most, of the components in my medical records program that I provided Tom Givens in 1983 included not only my name, but a notice of copyright and a date of publication."  (Dkt. No. 164-7 Exhibit E to Defendants' Brief in Support - Affidavit of Joel Goldman dated July 31, 2006 ¶ 9).  Plaintiff also states he "cannot recall a single incident in which I have deleted a copyright notice from an active working component of my medical records program, except in cases where I needed to replace a notice with an updated notice."  (*Id.* ¶ 10).  At his deposition, Plaintiff conceded he does not have a copy of the software he gave to Mr. Givens in 1983.  (Dkt. No. 164-4 Exhibit B to Defendants' Brief in Support - Goldman Deposition at 161-162, 299).  The oldest or earliest

[8]The same elements are outlined in the most recent edition of the treatise.  *See* 4 M. Nimmer & D. Nimmer, *Nimmer on Copyright*, § 13.01[A]  (2008).

available copies of Plaintiff's computer programs were found on a "386 computer." (*Id.* at 183, 299-300). Plaintiff testified the computer was made sometime in the mid to late 1980s. (*Id.* at 183, 292, 299-300). Only two of the programs on the 386 computer include all three elements of a copyright notice.[9] (Dkt. No. 164-6 Exhibit D to Defendants' Brief in Support - Printouts of the first page of the source code for programs). The user's manual created in 1989 and 1990 by Plaintiff, contains selected sample reports which are produced by Plaintiff's 1989 version of his program. (Dkt. No. 162-6 Exhibit D to Defendants' Brief in Support of Motion on Plaintiff's Expert Norman Jacobson - Jacobson's Report at 5). Neither the user's manual nor any of the sample reports contain full copyright notices. (Dkt. No. 162-10 and 11 Exhibit H to Defendants' Brief in Support of Motion on Plaintiff's Expert Norman Jacobson - Total Hospital Information Solution (User's Manual)).

In response to the motion, Plaintiff argues the evidence presented is not unequivocal. Plaintiff points out he did submit programs to the Copyright Office in 2004 which contain full copyright notices. Plaintiff, in his affidavit, states that his "HMRAE7" and "HMRY50" programs, which were filed with the Copyright Office as part of his registration are "true, accurate, and unaltered copies of source code from 1979." (Dkt. No. 193-3 Exhibit B to Plaintiff's Response - Goldman Affidavit dated July 31, 2006 ¶ 7). Plaintiff also refers this Court to the statement in his affidavit where he avers that most, if not all, of the programs he provided Mr. Givens contained full copyright notices.

Defendants' motion (Dkt. No. 163) is DENIED. Given the factual dispute in the record, this issue should be resolved at trial. Defendants' motion does not raise questions of the admissibility of certain evidence or suggest that the jury would somehow be prejudiced by the evidence. Accordingly, there is no basis, as a motion in limine, for excluding this evidence. This factual dispute does not render Mr. Thomas'

---

[9]The two programs with full copyright notice are the "HMRA95" program and the "HMRY50" program.

calculations unreliable.  Mr. Thomas is certainly free to rely on his client's assertions and make certain assumptions about the evidence.  Those assumptions may be challenged at trial.

      E. <u>Defendants' Motion for Leave to File a Reply (Dkt. No. 202)</u>

      Defendants argue, because of the complicated nature of the case and because Plaintiff filed a response "raising unsupported arguments and new arguments on which Defendants should be entitled to a response."  (Dkt. No. 202).

      Defendants' motion (Dkt. No. 202) is DENIED as to Defendants' motion regarding copyright claims.  The bulk of the proposed reply addresses Plaintiff's response to Defendant's motion regarding materials deposited with the Copyright Office.  The portion of the proposed response addressing the motion regarding copyright claims merely reiterates the same facts that are outlined in the brief supporting the motion and argues that Plaintiff failed to contest those facts.

      F. <u>Plaintiff's Motion in Limine to Exclude Evidence and Expert Testimony of HMS "Re-Write" Costs (Dkt No. 200)</u>

      Plaintiff argues the costs incurred by a defendant for attempts to remediate an infringement are irrelevant as a matter of law to any calculation of a plaintiff's damages.  In addition to being irrelevant, Plaintiff argues Defendants' expert testimony fails the reliability prong under *Daubert*.    After Plaintiff filed his suit for copyright infringement, Defendants attempted to rewrite their computer programs and remove what Plaintiff alleges is his source code.  (Dkt No. 192-2 Exhibit A to Plaintiff's Brief in Support - Givens' Deposition at 307).  The rewrite project was completed in September 2007.  (Dkt. No. 221-3 Exhibit A to Defendants' Response to Motion - Glenn Perdue Supplemental Report dated November 30, 2007 at 28, 37).  The total cost of the rewrite project was $325,000.00.  (*Id.* at 37).  Defendants' expert, Mr. Glenn Perdue, uses the September 2007 date as the last date for calculating damages for infringement.  (*Id.* at 28).  Mr. Perdue also used the costs associated with the rewrite program to calculate damages.

Under the Copyright Act, an infringer of a copyright is liable for either (1) the copyright owner's actual damages and additional profits attributable to the infringement not taken into account by actual damages or statutory damages.  17 U.S.C. § 504(a and b).  A plaintiff seeking actual damages must prove the existence of a causal connection between infringement and the loss of some revenue.  *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 358 (6th Cir. 2007).  A plaintiff seeking profits not taken into account by actual damages must first show evidence of the infringer's gross revenue attributable to the infringement.  *Id.* at 360.  The burden then shifts to the infringer to show its deductible expenses.  *Id.* Where a license fee is involved, the lost license fee goes to establishing actual damages, while the difference between the lost license fee and what the infringer would sell the infringement for goes to the infringer's profits.  *See Id.*

The Sixth Circuit, following the Second Circuit, has allowed actual damages in copyright infringement cases to include a reasonable license fee.  *Thoroughbred Software*, 488 F.3d at 359 (citing *Davis v. Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001)).  *See Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 539-540 (4th Cir. 2007) (finding actual damages for copyright infringement may be calculated based on the amount the holder would have received from a wiling buyer as a reasonable license fee).  The amount the copyright holder requests for the license fee must not be too speculative, that is it must find support in the evidence on the record.  *Davis*, 246 F.3d at 167 (2d Cir. 2001) (rejecting the request for a $2.5 million licensing fee for a photograph which included a model wearing the plaintiff's artistic eyewear and finding the evidence supported a license fee of $50).  *See also Polar Bear*, 384 F.3d at 708-709 (upholding a license fee award on the basis that Plaintiff's expert offered testimony as to a reasonable production and license fee by determining their fair market value) and *McRoberts Software*, 329 F.3d at 566 (finding sufficient evidence in the record to support the hypothetical lost license fee).  The court in *Polar Bear* noted the license fee amount used to calculate damages was the amount the plaintiff

quoted the defendant and that the defendant "was in no better position to haggle over the license fee than an ordinary thief and must accept the jury's valuation unless it exceeds the range of the reasonable market value." 384 F.3d at 709.

In Defendants' motion regarding Plaintiff's expert Vincent Thomas, Defendants criticize Mr. Thomas for failing to consider the actions taken to mitigate or avoid infringement. Defendants refer this Court to a patent infringement case, *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341 (Fed. Cir. 1999). In *Grain Processing*, the defendant manufactured a chemical product using a formula for certain food additives which infringed on a patent held by the plaintiff. The defendant altered the chemical formula four times between 1982 and 1991 before finally arriving at a formula which did not infringe upon the patent. The district court ultimately denied the plaintiff lost profits, finding that plaintiff could not establish causation for lost profits, and instead awarded the plaintiff a royalty fee on the defendant's infringing sales.[10] *Id.* at 1347. Important to the district court's decision on the amount of the award was its conclusion that the fourth formula established that there was a non-infringing substitute available. The district court's award represented the royalty the defendant would have been willing to pay when faced with a hypothetical offer to license the patent and the additional cost to produce the product using the non-infringing formula. *Id.*

The plaintiff appealed the conclusion that the non-infringing formula was available throughout the period of infringement, and the Federal Circuit remanded the action for additional findings. *Grain Processing*, 185 F.3d at 1347-1348. The district court again denied the plaintiff lost profits finding the

---

[10]35 U.S.C. § 284 provides
Upon finding for the claimant the court shall award the claimant damages
adequate to compensate for the infringement, but in no event less than a
reasonable royalty for the use made of the invention by the infringer, together
with interests and costs as fixed by the court.

non-infringing formula was available throughout the period of infringement. *Id.* at 1348. The district court also justified its conclusion on the basis that consumer demand did not distinguish between the patented formula and the non-infringing formula. *Id.* The Federal Circuit affirmed the decision. *Id.* at 1356.

In their response to Plaintiff's motion, Defendants offer other reasons why the evidence of the rewrite costs should be admitted. First, Defendants argue the evidence is relevant to Plaintiff's trade secret claim. Defendants reason that the value of the trade secret is an element which must be considered when determining whether something is a trade secret. Second, Defendants argue the evidence is relevant to establish the cut-off date for the alleged infringement of Plaintiff's program. Third, Defendants argue the evidence is relevant to establish the amount of a reasonable licensing fee. Finally, Defendants argue Mr. Perdue's expert opinions are not unreliable because it provides a point of comparison.

This Court is reluctant to borrow the remedial scheme from patent law without a greater justification for doing so. The Supreme Court has noted an "historic kinship between patent law and copyright law." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984). In a footnote immediately after that comment, Justice Stevens, writing for the majority, warned "[t]he two areas of the law, naturally, are not identical twins, and we exercise the caution which we have expressed in the past in applying doctrine formulated in one to the other." *Id.* at n. 19 (citations omitted). *See also Wechsberg v. United States*, 54 Fed. Cl. 158, 162 (stating that any comparison between patent law and copyright law "must take into account differences between these two aspects of intellectual property").

Copyright protects the expression of an idea, not the idea itself. *Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Robert R. Jones*, 858 F.2d at 277. While copyright protects the original expression of the idea, patents protect the innovative idea. *Id.* at 277-278. Copyright protection does not extend to any "idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodies in such a work." *Id.* at 277 (quoting

29

*Debetriades v. Kaufmann*, 680 F.Supp. 658, 662 (S.D.N.Y. 1988)).  Patents encourage technological development by preventing others from making, using or selling an invention for a specified amount of time.  Copyright protection is much narrower, protecting only an exclusive right to reproduce an original expression.  *Id.* at 278.

The ability to achieve the same or similar result using an alternative means may implicate the novelty of an idea and hence is relevant to the final assessment of damages in a patent suit, the same cannot be said in a copyright suit.  Patents encourage innovation.  Copyrights encourage originality in expression.  Copyrights give the holder the exclusive right to reproduce an original or derivative work.  If the work is infringed by copying without authorization, the copyright holder is entitled to damages for that infringement.  The ability to avoid damages by rewriting a computer program, or a song, or reproducing a painting, should not be considered because it would not implicate the *originality* of the expression being protected.  Those concerns are considered in patent cases precisely because the alternatives question the *novelty* of the patent; if there are alternatives, or could be alternatives in the marketplace, the idea is not novel.

The issue presented by Defendants appears to be one of first impression.  Neither Plaintiff nor this Court (nor apparently Defendants) could find a copyright infringement case where a court considered rewriting or re-creation steps taken by an infringer when assessing actual damages.  This Court located one instance where a rewrite did occur in a copyright case and did not affect the damages awarded.  In *Guskin v. Guralnik*, No. 85 civ 6428, 1988 WL 140812 (S.D.N.Y. Dec. 22, 1988), the plaintiff wrote two plays, one with the defendant and one without the defendant.  The defendant performed both plays for a number of years, paying the plaintiff royalties for both.  The two had a falling out and the defendant-performer sent the plaintiff-playwright a final royalty check for both presentations.  The defendant continued to perform one of the two pieces, with little alteration, for another two years before finally

rewriting the script.  The plaintiff sued for copyright infringement, alleging the rewritten version was substantially similar to the original and sought actual damages attributable to the performances that occurred after the individuals had their falling out.  The trial court found the rewritten version of the script was not substantially similar to the original version.  *Id.* at *4.  The trial court did award actual damages for the infringing performances that occurred after the falling out, but before the script was rewritten.  *Id.*

Plaintiff's motion (Dkt. No. 200) is GRANTED IN PART.  The rewrite costs are not relevant to the calculation of actual damages resulting from Defendants' copyright infringement.  Plaintiff has not questioned the relevance of the date the rewrite project was completed.  The costs associated with the rewrite project may be relevant to Plaintiff's trade secret claim.  Plaintiff's motion does not specifically address the relevance of the rewrite costs to their trade secret claim.  Accordingly, this Court reaches no conclusion on this sub-issue.  This Court notes there is a pending motion in limine regarding Plaintiff's trade secret claim.  *See* Dkt. No. 171.  The evidence of rewrite costs does not render Mr. Thomas' calculations unreliable.  Mr. Thomas' supplemental report was completed more than eight months before the rewrite project was completed.  This Court cannot say that Mr. Thomas' calculations were unreliable based upon cost information that was not available.

## III.  CONCLUSION

Defendants successfully challenged Plaintiff's calculation of damages based on the applicable statute of limitations and based upon the assumption of the number of updates to the software which occurred over the years.  Defendants are correct that Plaintiff's expert should not testify on prejudgment interest, although Defendants are not correct that prejudgment interest cannot be awarded.  Plaintiff has successfully challenged Defendants' ability to use the costs associated with rewriting the software as a way to mitigate damages.

<u>ORDER</u>

Consistent with the above opinion, the following is **ORDERED:**

1.    Defendants' Motion (Dkt. No. 161) in Limine/Daubert Motion on Plaintiff's Expert Norman

       Jacobson is **DENIED.**

2.    Defendants' Motion (Dkt. NO. 155) in Limine/Daubert Motion on Plaintiff's Damages Claims and

       Expert (Vincent A. Thomas) Report and Testimony is **GRANTED IN PART and DENIED IN**

       **PART.**

3.    Defendants' Emergency Motion (Dkt. No. 248) to Exclude Testimony and Evidence from

       Plaintiff's Experts at the March 18 through March 20 *Daubert* Hearings is **DENIED AS MOOT.**

4.    Defendants' Motion (Dkt. No. 163) on Goldman's Copyright Claims is **DENIED.**

5.    Defendants' Motion for Leave to File Reply Brief to Plaintiff's Motions in Limine Regarding

       Copyright Claims and Materials Deposited with the Copyright Office is **DENIED IN PART.**

6.    Plaintiff's Motion in Limine to Exclude Evidence and Expert Testimony of HMS "Re-Write" Costs

       is **GRANTED IN PART.**


Date:   June 5, 2008                                                  /s/ Paul L. Maloney
                                                                      Paul L. Maloney
                                                                      United States District Judge

32